Catherine GOSSMAN, Plaintiff–Appellee,

v.

Dr. David T. ALLEN; Chris Gorman; Irv Maze; Darryl Owens; and Harvey Sloane, Defendants–Appellants,

Louisville & Jefferson County Board of Health; Defendant.

No. 91–5547.

United States Court of Appeals, Sixth Circuit.

Argued Nov. 14, 1991.

Decided Dec. 12, 1991.

Thomas J. Banaszynski (briefed) and Oliver H. Barber, Jr. (argued), Gittleman & Barber, Louisville, Ky., for plaintiff-appellee.

David A. Brill, Samuel H. DeShazer (argued and briefed), Goldberg & Simpson, and Stuart L. Adams, Jr. (argued and briefed), Rich, Adams, Sisney & D'Ambrosio, Louisville, Ky., for defendants-appellants.

Before MILBURN and GUY, Circuit Judges, and GRAHAM, District Judge.[*]

RALPH B. GUY, Jr., Circuit Judge.

The plaintiff, a former public employee, brought this state law and First Amendment action against her former county agency and several county officials, alleging that she was terminated for statements she made to the media, the public, and a court. The officials appeal the district court's denial of their motions for summary judgment on the ground of qualified immunity. Finding that the illegality of the officials' alleged actions under the First Amendment was not clearly established,

---

[*] The Honorable James L. Graham, United States District Court for the Southern District of Ohio, sitting by designation.

we reverse in part, affirm in part, and remand for further proceedings.

## I.

The plaintiff, Catherine Gossman, is a former employee of defendant Louisville and Jefferson County Board of Health. The Board's director, defendant Dr. David Allen, terminated Gossman's employment on October 9, 1989. The remaining defendants, Chris Gorman, Irv Maze, Darryl Owens, and Harvey Sloane, approved Gossman's termination in their capacities as members of the Jefferson County Fiscal Court.

Gossman was hired as a public health environmentalist in the Residential Housing Section in 1983. In 1986, she became an inspector in the Waste Water Treatment Program. Gossman soon became embroiled in a dispute over enforcement priorities with her supervisor, Sarah Cunningham. The dispute continued for several months until Gossman was involuntarily transferred to the Rodent Control Division in 1987. Gossman remained in Rodent Control until her firing in 1989.

After her transfer, Gossman continued to criticize the activities of Cunningham and the Waste Water Treatment Program. She wrote letters to state and federal officials urging investigation of alleged favoritism and other improprieties in the program. Gossman was not disciplined for these activities.

Gossman's termination followed a series of events beginning in August 1989. In a memorandum to Gossman, Allen explained that he decided to fire her because of three specific incidents. First, Gossman spoke at an August 1989 public hearing held by the Airport Authority. In her statement at the hearing, Gossman contended that the city and county planned to expand the airport without a proper environmental impact statement. Gossman supported her position that the local government could not be trusted by including allegations that the Waste Water Treatment Program engaged in favoritism and covered up illegal pollution. Allen's termination memorandum stated that these allegations would adversely affect public confidence in the Board.

Second, Gossman, using the pseudonym "Eileen Jenkins," wrote several articles about alleged corruption in the Waste Water Treatment Program and distributed these articles to local media outlets. The articles quoted Gossman extensively. Gossman did not advise the recipients of these articles that she had written them herself. Allen stated in the termination memorandum that the articles contained unsubstantiated allegations.

Third, in September 1989, Gossman filed an affidavit in a federal enforcement action against a local waste water treatment plant. Gossman filed the affidavit to rebut an affidavit Sarah Cunningham had filed on behalf of the EPA. In her affidavit, Gossman asserted that Cunningham had engaged in a course of "nit-picking" against the plant and that the plant had generally complied with pollution regulations. Gossman attached to the affidavit two letters she had written to state and federal authorities. These letters alleged that corruption and favoritism motivated decisionmaking in the Waste Water Treatment Program. Gossman also attached two articles that she had written under the "Eileen Jenkins" pseudonym. Allen's termination memorandum stated that Gossman's affidavit contained misstatements and half-truths and contradicted the affidavit given by Cunningham, the Board's authorized agent.

Allen concluded that Gossman's conduct violated Jefferson County's personnel policy by undermining public confidence, causing internal discord, and impairing the Board's ability to carry out its duties. Gossman's termination became effective on October 9, 1989.

Gossman filed this action in Jefferson County Circuit Court in January 1990. The complaint alleged that Gossman's termination violated the First Amendment, Kentucky public policy, and the state "whistleblower" law, Ky.Rev.Stat.Ann. § 61.102. Gossman sought compensatory and punitive damages, recovery of her litigation

costs, and reinstatement. The defendants removed the case to federal district court.

In August 1990, Gossman amended her complaint to request damages against Allen, Gorman, Maze, Owens, and Sloane in their individual capacities as well as their official capacities. The defendants filed motions for summary judgment in January 1991. The individual defendants then filed additional motions for summary judgment on qualified immunity grounds in February 1991.

The district court denied the individual defendants' motions for qualified immunity in April 1991. The court stated that the First Amendment free speech rights of public employees were clearly established by the time of Gossman's termination. The court also found that the Kentucky "whistleblower" law was clearly established by October 1989. The district court did not decide the defendants' other summary judgment motions.

The individual defendants then filed this appeal.

## II.

The defendants argued in the district court and again on appeal that they are entitled to qualified immunity from all of Gossman's claims, including her state law claims. The district court held that the defendants were not immune to Gossman's claim under Kentucky's "whistleblower" law, because that law was clearly established when Gossman was terminated.

■ We affirm the district court holding denying the defendants qualified immunity on the state law claims. Gossman's state law claims are not used to establish any violation of federal law. Instead, Gossman seeks the damages expressly provided by the "whistleblower" law. Ky.Rev.Stat. Ann. § 61.103(1). Since Gossman's state law claims for damages do not invoke any federal law whatsoever, qualified immunity is not an available defense. *See Andreu v. Sapp*, 919 F.2d 637, 640 (11th Cir.1990). We therefore affirm the district court's

denial of the defendants' qualified immunity defense to Gossman's state law claims.

## III.

Gossman's First Amendment claim invokes 42 U.S.C. § 1983.[1] Therefore, qualified immunity may be offered as a defense to Gossman's First Amendment claim for damages.

The defendants argue that the district court erred by denying them qualified immunity to Gossman's First Amendment claims. They contend that the court misapplied the qualified immunity test by using an overly abstract analysis.

■ A government official enjoys qualified immunity if his or her conduct does not violate clearly established federal "statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The proper inquiry is not whether the claimed right existed in the abstract, but whether a reasonable official would have known that the challenged conduct violated that right. *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). Under this test, an official will be immune "if officers of reasonable competence could disagree" on whether the conduct violated the plaintiff's rights. *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986). Since the applicability of a qualified immunity defense is a pure question of law, we review the district court's decision *de novo*. *Henry v. Metropolitan Sewer Dist.*, 922 F.2d 332, 339 (6th Cir.1990).

■ We agree with the defendants that the district court used an overly abstract analysis. The court's only holding directly relating to the "clearly established" issue was that "[t]he legal rights of citizens under the first amendment to the United States Constitution were clearly established at the time plaintiff was discharged from her employment." While this statement is true, it does not address whether

---

1. Gossman's complaint never cites section 1983. However, a First Amendment claim for dam- ages against government officials invokes section 1983 by implication.

the defendants' alleged conduct violated clearly established First Amendment principles.

The court later cited *Mount Healthy City Board of Education v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), for the two-step test that Gossman must meet to prevail at trial. The court concluded that Gossman's speech involved matters of public concern and that the Board's interest in efficient operation did not outweigh her right to speak freely. This analysis is relevant to decide whether Gossman's claim should survive a motion for summary judgment on the merits. This analysis, however, does not address the qualified immunity inquiry of whether a reasonable official would know that firing Gossman violated her First Amendment rights.

We therefore find that the district court did not adequately consider whether the defendants' alleged conduct violated Gossman's clearly established First Amendment rights. Gossman urges us to remand to the district court for a more particularized inquiry as we did in *Poe v. Haydon,* 853 F.2d 418 (6th Cir.1988), *cert. denied,* 488 U.S. 1007, 109 S.Ct. 788, 102 L.Ed.2d 780 (1989). The defendants, on the other hand, urge us to resolve the issue now.

We find that no purpose would be served by remanding this issue. Unlike *Poe,* there is no disputed question in this case involving the defendants' motivations. *Cf. Poe* at 432. The defendants admit that Gossman was fired because of her statements to the public, to the media, and to a federal court. Therefore, we need only examine the purely legal question of whether reasonable officials could have disagreed over whether the First Amendment would bar terminating Gossman for her statements.

■ The First Amendment protects the right of public employees to comment on matters of public concern. *Pickering v. Board of Educ.,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). The *Pickering* doctrine, however, has two important limitations. First, the Court declined to extend protection to false statements that are knowingly or recklessly made. *Id.* at 574, 88 S.Ct. at 1737. Second, the employee's right to comment on matters of public concern must be balanced against the interest of the public employer in efficiently providing services to the public. *Id.* at 568, 88 S.Ct. at 1734.

■ The defendants argue that both of these limitations on a public employee's free speech rights apply here. They contend that Gossman made many of the statements in her affidavit with knowledge of, or reckless indifference to, their falsity. Since we are reviewing the record to see whether the defendants have qualified immunity, we need not decide whether Gossman knowingly or recklessly made false statements. Instead, we need only decide whether a reasonable official could believe that Gossman knowingly or recklessly made false statements. If an official reasonably believes that an employee made statements with knowledge of, or reckless indifference to, their falsity, the official would conclude that the employee could be fired without offending the First Amendment. Qualified immunity would therefore attach. *Cf. Guercio v. Brody,* 911 F.2d 1179, 1189 (6th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1681, 114 L.Ed.2d 76 (1991) (affording qualified immunity to official who reasonably believed that value of terminated employee's speech was outweighed by harm to employer).

The defendants contend that Gossman's affidavit contained numerous false statements that were made knowingly or recklessly. For example, Gossman's affidavit states that the effluent discharge from the Confederate Acres wastewater plant "was generally in compliance with the rules and regulations" between July 1986 and November 1987. However, Gossman admitted in her deposition that she had repeatedly cited Confederate Acres for wastewater violations during this period. Gossman's affidavit states that safety violations mentioned in Cunningham's affidavit "have nothing to do with the effluent discharge." Gossman admitted in her deposition, however, that she had written orders to Confederate Acres for at least 21 safety violations, and that some of the violations may

have involved mechanisms designed to prevent the discharge of sewage into streams.

The defendants also point to the articles attached to the court affidavit that Gossman had written under the pseudonym, "Eileen Jenkins." The defendants argue that Gossman knowingly or recklessly misled the court and the media by writing these articles under a pseudonym, quoting herself in the third person, and by making the articles appear as if they had been published in a newspaper. The defendants also claim that many of the statements appearing in the articles are false. For example, one of the articles claims that parts of the county suffered sewer overflows because the Board did not require the Metropolitan Sewer District to give priority to sewer expansion. Gossman admitted in her deposition, however, that the Board lacks the authority to impose such a requirement on the Metropolitan Sewer District. One of the articles claims that a hepatitis outbreak could have been prevented if the Board had more environmentalists. In her deposition, Gossman revised her claim to argue that the severity of the outbreak could have been lessened.

From these examples, we find that a reasonable official could believe that Gossman had knowingly or recklessly made false statements to the media and to the court. These statements all involved the functioning of the Board. The statements in the affidavit were directly adverse to the position taken by the Board in the litigation. The statements to the media were clearly designed to damage the reputation of the Board. Since *Pickering* does not prevent a public employer from terminating employees who knowingly or recklessly make false statements, the defendants could reasonably believe that their conduct

did not violate Gossman's First Amendment rights.[2]

Accordingly, we hold that the individual defendants have qualified immunity from Gossman's First Amendment claim for damages. We express no opinion as to the merits of Gossman's First Amendment claim; our holding is limited to the qualified immunity of the individual defendants.[3]

In summary, we AFFIRM the district court's denial of qualified immunity on Gossman's state law claims and REVERSE the denial of the qualified immunity defense to the First Amendment claim. We REMAND to the district court for further proceedings.

---

**2.** Since we find that the defendants could reasonably have believed that Gossman knowingly or recklessly made false statements, it is not necessary for us to decide whether the defendants could reasonably have believed that the harm to the Board's efficiency outweighed Gossman's interest in speaking freely. *Cf. Guercio,* 911 F.2d at 1189.

**3.** Gossman argues that Allen cannot claim qualified immunity because he is not in a policymaking position. This argument is not properly before us because Gossman has raised it for the first time in this appeal. *See Boone Coal and Timber Co. v. Polan,* 787 F.2d 1056 (6th Cir. 1986).