959 F.2d 234
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
John Thomas DEVINE, Plaintiff-Appellee,
v.
M.T. PICKERING, James Eure, Coleman Davis, and Ted Denny,
Defendants-Appellants.
 Nos. 91-5950, 91-5961.
 United States Court of Appeals, Sixth Circuit.
 April 8, 1992.
 
 Before NATHANIEL R. JONES, RALPH B. GUY, JJ., and BATCHELDER, Circuit Judges.
 RALPH B. GUY, Jr., Circuit Judge.
 
 
 1
 Tennessee police officers appeal the denial of summary judgment, which they had sought on the basis of qualified immunity, in plaintiff's 42 U.S.C. § 1983 case alleging illegal arrest and excessive force. We reverse in part and remand in part for further proceedings.
 
 I.
 
 2
 The facts surrounding the allegedly illegal arrest are undisputed. Those pertaining to plaintiff's excessive force claim are hotly contested.
 
 
 3
 Late one night in October 1989, plaintiff, 19-year-old John Devine, was riding as a passenger in his Jaguar. His friend, 21-year-old Michael Barbee, was driving. While the two drove around, Devine found two bottles of liquor under the passenger seat. He opened one bottle, tasted it, and recapped it.
 
 
 4
 Some time later, Devine and Barbee were joined by a 16-year-old girl, Leigh Plank. Devine knew of Plank's age, and knew that there was alcohol in the car when he invited her to go for a ride.
 
 
 5
 After 10 minutes of driving around, the trio was stopped by two Clarksville police detectives who suspected drunk driving. Although it appeared to the detectives that Barbee had been drinking, he passed a field sobriety test. The detectives found the bottles under Devine's seat. Devine told them he had taken a sip out of one. The detectives instructed Devine to empty the bottles by the roadway. He complied. They also told Devine and Barbee to return Plank to her car and be off the street in an hour.
 
 
 6
 Just as Devine was about to drive away, defendant Ted Denny arrived. Denny questioned the detectives, whom he outranked, and learned that there had been drinking by underaged individuals and that a minor was present. Denny told the detectives that a new Tennessee law required them to issue a warning citation to the minor. Denny also decided to issue citations to Barbee and Devine as well. The detectives then left.
 
 
 7
 At about this time, defendant officers Pickering, Eure, and Davis arrived. Before leaving to transport Plank back to her car, Denny instructed Pickering to write out the citations to Devine and Barbee for the misdemeanor of contributing to the delinquency of a minor. Denny told Pickering that Devine had been drinking in the presence of the 16-year-old.
 
 
 8
 Pickering filled out his misdemeanor citation book and had Barbee sign it. Trouble developed, however, when Pickering handed the book to Devine to sign. According to Devine, he asked if he could read the citation first. Officer Davis, he contends, took out his handcuffs and told Devine he was "pissing him off." Pickering allegedly ordered Devine to "sign the fucking ticket like a goddamn human being."
 
 
 9
 Devine wrote his first name but then stopped. He claims that the pen ran out of ink; according to the officers' recitation, Devine "refused to finish signing" the citation and threw it back at Pickering. Pickering then decided to make a custodial arrest. Devine says that Pickering then grabbed him by the throat and pushed him against the car. The officers claim that Devine started shoving Pickering, and that Davis and Eure came to his aid.
 
 
 10
 As Devine puts it, Davis and Eure wrestled him to the ground and hit and handcuffed him. Even when they had him subdued, according to Devine, they "rammed his head two or three times" into the doorjamb of the police car before pitching him inside. In the officers' version, Devine struggled and kicked Davis several times while the officers were trying to handcuff him. When Devine was seated back in the patrol car, he allegedly kicked Eure twice. Devine suffered no broken bones in the incident and required no stitches.
 
 
 11
 Devine's ensuing section 1983 suit against the officers was eventually winnowed, after discovery, to allegations that Sergeant Denny and Officer Pickering were responsible for an illegal arrest, and that Pickering, Davis and Eure had used excessive force in effecting an arrest.[1] Apparently due to the existence of disputed facts, the district court denied the defendants' motion for summary judgment in which they had asserted, among other things, the defense of qualified immunity. At the hearing, the judge refused altogether to hear defense arguments concerning qualified immunity. Defendants now appeal.
 
 II.
 
 12
 Devine's section 1983 claim against Sergeant Denny and Officer Pickering alleges that they participated in an illegal arrest--Denny by ordering it, Pickering by carrying it out. Specifically, Devine alleges that the arrest violated the Fourth Amendment in that neither Denny nor Pickering had probable cause to believe that Devine had committed the offense of contributing to the delinquency of a minor. Neither Denny nor Pickering was present when this misdemeanor took place, and by the time these two defendants arrived on the scene, the whiskey had been poured out and the detectives had already decided to permit Devine and his friends to leave. These facts are undisputed.
 
 
 13
 "[G]overnment officials performing discretionary functions[ ] generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). "The question of whether qualified immunity attaches to an official's actions is a purely legal question for the trial judge to determine prior to trial." Garvie v. Jackson, 845 F.2d 647, 649 (6th Cir.1988). "If the undisputed facts show that defendant's conduct, as a matter of law, did not violate clearly established legal rights, then the district court must grant the defendant summary judgment on the basis of qualified immunity." Poe v. Haydon, 853 F.2d 418, 425 (6th Cir.1988), cert. denied, 488 U.S. 1007 (1989) (citation omitted).
 
 
 14
 In this case, as in Poe, the district judge failed to articulate the bases for his conclusion that the defendants were not entitled to qualified immunity--that, in effect, "a genuine issue exists as to the commission of acts violating" plaintiff's constitutional right. Poe, 853 F.2d at 426. The record reveals that the judge declined to consider the qualified immunity issue at all. Such action, coupled with the importance of defendants' motivations, prompted us in Poe to remand. More recently, however, in Gossman v. Allen, 950 F.2d 338, 342 (6th Cir.1991), we found that a district court's failure to conduct a more particularized inquiry regarding qualified immunity did not prevent us from making our own assessment of defendants' entitlement to such immunity. In Gossman, we concluded that "no purpose would be served by remanding" since "there [was] no disputed question ... involving defendants' motivations"; only a "purely legal question" remained. Id.
 
 
 15
 Here, the propriety of deciding the "purely legal question" on appeal is not as obvious, since the basis of our qualified immunity analysis--with respect to defendants Denny and Pickering--has not been briefed by the parties. Poe, 853 F.2d at 426. Nevertheless, in the interest of judicial economy and in deference to the rationale behind the qualified immunity doctrine, we will here consider these two defendants' entitlement to immunity in this case.
 
 
 16
 Devine insists, and defendants appear to agree, that the issuance of the citation amounted to an "arrest" within the meaning of the Fourth Amendment. Devine claims the officers, who were not present during the alleged activity contributing to the minor's delinquency, and who allegedly had no basis to conclude such activity even occurred, violated his clearly established right to be free from arrests unsupported by probable cause.[2] On the basis of the undisputed facts, however, we conclude that while Devine was "seized" when Denny ordered Pickering to write the citation, he was not then "arrested." Probable cause, therefore, was not required.
 
 
 17
 "[W]hen the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen we may conclude that a 'seizure' has occurred." Terry v. Ohio, 392 U.S. 1, 19, n. 16 (1968). It is beyond doubt that when Denny ordered Pickering to issue the citation, these defendants communicated to Devine "that [he] was not free to ... terminate the encounter," at least until he signed the citation. Florida v. Bostick, 111 S.Ct. 2382, 2389 (1991). This does not mean, as the parties assume, that Devine was "arrested." The issuance of a citation, in which the offender is given no reason to expect more than a temporary detention, is analogous to the routine issuance of a traffic ticket, which the Supreme Court has held falls short of formal arrest. Berkemer v. McCarty, 468 U.S. 420, 437-42 (1984). An arrest, according to the Court, typically entails "a trip to the station house [for] prosecution for [a] crime." Terry, 392 U.S. at 16.[3] No one argues that such an extensive intrusion occurred here when Pickering was ordered to write the citation.
 
 
 18
 Indeed, Devine concedes as much in his complaint when he states that Pickering ordered him to sign a "citation in lieu of an arrest." Under Tennessee law, an officer may issue "a citation in lieu of arrest of the suspected misdemeanant" if, among other things, "[t]here is no reason to believe the suspected misdemeanant will not appear as required by law." Tenn.Code Ann. § 40-7-118(m).[4] We are mindful, of course, that the "application of the Fourth Amendment's requirement of probable cause does not depend on whether an intrusion ... is termed an 'arrest' under state law." Dunaway v. New York, 442 U.S. 200, 212 (1979). On this uncontested record, however, the issuance of the citation "cannot fairly be characterized as the functional equivalent of formal arrest." Berkemer, 468 U.S. at 442.
 
 
 19
 Because we find, on the basis of undisputed facts, that Sergeant Denny and Officer Pickering did not arrest Devine when ordering and writing the citation, these defendants were entitled to judgment on their claims of qualified immunity with respect to Devine's illegal arrest claim. (As Devine assumed he was arrested upon the ordering and issuance of the citation, he did not, and on this record could not, argue alternatively that the admitted "seizure" was unreasonable in terms of scope, manner, or duration.) We therefore reverse the denial of summary judgment as to defendants Denny and Pickering on the false arrest claim and remand the case for entry of judgment in their favor.
 
 II.
 
 20
 Unlike the facts pertaining to the ordering and issuance of the citation, the facts regarding the use of excessive force in the scuffle following Devine's alleged "refusal" to sign the citation are in dispute. Devine claims that the officers struck him during the fracas; they claim they merely used the force required to subdue him while he kicked and struggled. Devine denies kicking any of the officers. Devine also points to the deposition testimony of Thomas Barbee, who claimed to have been so scared by the officers' rough treatment of his friend that he thought of getting a shotgun out of one of the police cars. In addition to their denial of Devine's allegations, the officers also point to the fact that Devine suffered little or no injury.
 
 
 21
 "[A]ll claims that law enforcement officers have used excessive force--deadly or not--in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard...." Graham v. Connor, 490 U.S. 386, 395 (1989) (emphasis omitted). An assessment of the reasonableness of the force used "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. at 396.
 
 
 22
 On this record, it would have been impossible for the district court to grant the officers' summary judgment motion. If the facts are as Devine has alleged, the officers may be found to have violated his clearly established right to be free from the use of excessive force.[5]
 
 
 23
 REVERSED in part and REMANDED in part for further proceedings.
 
 
 
 [1]
 Devine's illegal arrest claim pertains only to the initial ordering and issuance of the citation. He challenges the subsequent custodial arrest (which followed the scuffle) for the officers' alleged use of excessive force, and not for any lack of probable cause
 
 
 [2]
 Devine also argues that the Tennessee statute which prohibits warrantless arrests for misdemeanors not occurring in the officer's presence codifies Fourth Amendment jurisprudence. Tenn.Code Ann. § 40-7-103. The district judge, apparently ignoring Devine's assertion of a Fourth Amendment violation, stated that an arrest in contravention of this statute did not implicate federal constitutional guarantees because "It's not a deprivation of life, liberty or property without due process of law." We agree that the statutory violation fails, by itself, to raise a Fourth Amendment concern, but because the common law distinctions between warrantless arrests for felonies and misdemeanors, so often cited by the Supreme Court, have never been deemed to be incorporated into, or demanded by, the Fourth Amendment
 
 
 [3]
 See also Israel, Kamisar, LaFave, Criminal Procedure and the Constitution, 5 (1989): "[A]rrest [entails] the taking of a person into custody for the purpose of charging him with a crime. This ordinarily involves the officer's exercise of physical control over the suspect for the purpose of first transporting him to a police facility...." Transport to the station house is not, of course, a necessary ingredient of an arrest; for example, Florida v. Royer, 460 U.S. 491, 503 (1983), teaches that, "[a]s a practical matter," an investigatory stop can shade into an arrest simply due to its manner and duration
 
 
 [4]
 The record does not conclusively reveal that the citation was issued under this particular code section. In their answer, however, defendants Pickering, Eure and Davis "admitted that the Defendant, M.T. Pickering, asked the Plaintiff to sign a citation in lieu of arrest...."
 
 
 [5]
 As we have held that the defense of qualified immunity ordinarily may not be raised against a claim of excessive force, Holt v. Artis, 843 F.2d 242, 246 (6th Cir.1988), defendants' appeal of the order denying their motion for summary judgment on the excessive force claim is therefore technically outside the special class of summary judgment denials appealable under Mitchell v. Forsyth, 472 U.S. 511, 530 (1985). We write on this summary judgment denial only to clarify our disposition as to the several defendants