46 F.3d 1131
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Gregory A. JOHNSON, Administrator of the Estate of Robert
Earl Johnson, Plaintiff-Appellee,
v.
Bobby Lewis BUNCH, Warren County Jailer; Jesse Miller,
Deputy Jailer; William H. Lasley; and James
Sweat, Defendants-Appellants.
 Nos. 93-6459, 93-6460.
 United States Court of Appeals, Sixth Circuit.
 Feb. 2, 1995.
 
 Before: NELSON, NORRIS, and DAUGHTREY, Circuit Judges.
 PER CURIAM.
 
 
 1
 This consolidated action was brought under 42 U.S.C. Sec. 1983 by Gregory Johnson, the son and administrator of the estate of Robert Earl Johnson, an inmate who died of a massive pulmonary embolism while incarcerated in a Kentucky state prison facility. The question on appeal concerns the district court's ruling that some of the officials named as defendants were not entitled to qualified immunity. We disagree with that decision and therefore find it necessary to reverse the district court's judgment.
 
 
 2
 At the time of his death, Robert Johnson was a state prisoner participating in a community work-program administered at a regional jail facility. In early 1991, Johnson, an obese man with a history of high blood pressure, began complaining of various symptoms--shortness of breath, chest pains, dizziness, fainting, headaches, and severe anxiety. He was seen at various times by a Dr. Larson, a private physician under contract with the county to treat jail inmates. On February 8, Johnson was involved in a wreck in route to the jail from a county work crew and was examined in a hospital emergency room for neck pain. As a follow-up, the hospital scheduled an appointment for Johnson to see an orthopedist on February 18. Johnson nevertheless felt well enough the weekend following the accident to play basketball with his son while at home on furlough, although the plaintiff did notice that his father was experiencing chest pain and shortness of breath.
 
 
 3
 During the next week, Johnson continued to complain of various symptoms and was given light duty work to do. Although he did not see a doctor until his appointment on February 18, he saw nurses on the jail's medical staff on at least four occasions. On February 18, he saw both an orthopedist and Dr. Larson, whom he saw again on February 20, along with three other outside doctors. Dr. Larson ordered an EKG and chest x-rays in an effort to diagnose Johnson's underlying medical problem. However, before the results of these tests were available and before Dr. Larson could see Johnson again during a scheduled visit to the jail on February 22, Johnson was transferred to the Roederer Correctional Complex, a state prison facility.
 
 
 4
 This action was taken for two reasons: first, because Johnson did not feel well enough to work, which was required as part of the community service program, and second, because the Roederer facility had an on-site medical facility and staff, which correctional officials thought would be better able to diagnose and treat Johnson. On his arrival late on Friday, February 22, Johnson was screened by a non-medical correctional officer and was scheduled for a full medical examination the following Monday. (Physicals were routinely done on Monday through Friday only.) Johnson also saw a nurse on Sunday. In the early hours of Monday, February 25, Johnson suffered a massive, and ultimately fatal, stroke caused by a pulmonary embolism. Despite the efforts of medical technicians, Johnson died in the ambulance on the way to a nearby hospital. There are indications in the record that a pulmonary embolism is difficult to diagnose, and, obviously, the existence of the embolism may have been masked by Johnson's other chronic medical problems.
 
 
 5
 On behalf of his father's estate, the plaintiff brought suit against various county officials (the county executive and county magistrates, members of the county fiscal court, the county jailers, and Dr. Larson). In a second action since consolidated with the first, he sued a large number of state officials (including members of the governor's cabinet, certain high-level parole and probation officials, the warden and the classification supervisor of the Roederer Correctional Complex, and eight corrections officers at the Roederer facility). The plaintiff also included in his complaint pendent state claims for negligence.
 
 
 6
 The case was referred by the district court to a magistrate judge, who, in response to a motion for summary judgment by the defendants based on qualified immunity, recommended that the federal claims against all defendants except Dr. Larson be dismissed with prejudice and that the pendent state claims be dismissed without prejudice. As to the state defendants, the magistrate judge found that, in their official capacities, they were immune under the Eleventh Amendment and, in their official capacities, they were entitled to qualified immunity. In so ruling, the magistrate judge found that the state defendants were not deliberately indifferent to Robert Johnson's medical needs. He likewise found that the county officials were protected by qualified immunity, leaving only Dr. Larson as potentially liable. The district court adopted most of the magistrate judge's report, dismissing the federal claims against most of the defendants in their official and individual capacities, including Dr. Larson, whose course of treatment the court found not to be deliberately indifferent. However, the district court denied summary judgment on behalf of Bobby Bunch and Jesse Miller, the county jailers, and on behalf of William H. Lasley and James Sweatt, who were, respectively, the warden of the Roederer Correctional Complex and its supervisor of classification.
 
 
 7
 The district court reasoned that Bunch and Miller were not entitled to qualified immunity because a reasonable jury could conclude that they had manifested indifference to Johnson's condition by denying or delaying medical care, in violation of the Eighth Amendment. The court further held that a reasonable jury could conclude that Warden Lasley, as the individual responsible for establishing and implementing all policies and procedures at the Roederer facility, showed deliberate indifference when he failed to have medical personnel conduct the initial screening interviews. The court also held that a reasonable jury could conclude that Sweatt, as the individual responsible for establishing, implementing, and supervising the medical program and policies at Roederer, demonstrated deliberate indifference by authorizing, approving, or acquiescing in the practice of delaying the examination of inmates transferred for medical reasons. All four of these defendants have appealed, insisting that they are entitled to qualified immunity and that summary judgment should have been entered in their favor. We agree.
 
 
 8
 The facts before the district court could, perhaps, be characterized as showing inadvertent failure to provide adequate care. They might even be stretched to show a degree of negligence in the handling of Robert Johnson's medical needs. But, as the record stands, the conduct in question does not rise even to the level of medical malpractice, and it clearly does not establish the degree of intent or of recklessness necessary to support a finding of "deliberate indifference" under the Eighth Amendment. As the Supreme Court recently noted:
 
 
 9
 To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety.... It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock.
 
 
 10
 Whitley v. Albers, 475 U.S. 312, 319 (1986); see also Estelle v. Gamble, 429 U.S. 97, 104-6 (1976). In the context of deliberate indifference to medical needs, this
 
 
 11
 court has said: Officials may be shown to be deliberately indifferent to such serious needs without evidence of conscious intent to inflict pain. However, the conduct for which liability attaches must be more culpable than mere negligence; it must demonstrate deliberateness tantamount to intent to punish.... Knowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference.
 
 
 12
 Horn by Parks v. Madison County Fiscal Court, 22 F.3d 653, 660 (6th Cir.), cert. denied, 115 S.Ct. 199 (1994) (citations omitted).
 
 
 13
 In this case, the record shows that Robert Johnson was given continuing medical attention and treatment, appropriate to his apparent condition. Although it is tragic that the pulmonary embolism could not be diagnosed before it killed him, his death did not result from deliberate indifference to his medical needs.
 
 
 14
 We conclude that the actions of the appellants in this case did not violate any of Robert Johnson's clearly established constitutional rights. It follows that, as government officials performing discretionary functions, they are entitled to immunity from civil damages, Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982), as a matter of law. See also Gossman v. Allen, 950 F.2d 338, 341 (6th Cir.1991). We therefore REVERSE the judgment of the district court on the question of qualified immunity and REMAND the case to the district court for the entry of appropriate orders.