NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 08a0394n.06
Filed: July 1, 2008

No. 07-1546

**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| Beverly Grose, f/k/a Beverly Harrington, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | | |
| v. | | ON APPEAL FROM THE |
| | | UNITED STATES DISTRICT |
| Patricia Caruso, Joan Yukins, and Bruce Curtis, | | COURT FOR THE EASTERN |
| | | DISTRICT OF MICHIGAN |
| Defendants-Appellants. | | |

Before:      KEITH, DAUGHTREY, and GIBBONS, Circuit Judges

DAMON J. KEITH, Circuit Judge.  On November 17, 2006, Beverly Grose (formerly Beverly Harrington) brought the present 42 U.S.C. § 1983 claim against Patricia Caruso, the Director of the Michigan Department of Corrections (MDOC); Joan Yukins, Deputy Director of Field Operations Administration; Bruce Curtis, administrator of the Special Alternative Incarceration; Correctional Medical Services, Inc. (CMS); Nurse Sherilyn Butler; and Physician Assistant Gopal Krishna Singhal.  Grose alleged that defendants' provision of insufficient medical care violated her Eighth Amendment right to be free from cruel and unusual punishment.

Three of the defendants, Caruso, Yukins, and Curtis ("Appellants"), subsequently filed a 12(b)(6) motion to dismiss on the basis of qualified immunity.  At a hearing on April 11, 2007, the district court denied the motion, stating:

> Well, I think that the allegations are, somewhat, generalized . . . .  And yet,
> we are dealing with only a notice pleading requirement in this case.
> And in looking through the complaint, as it has been drafted, I'm persuaded

that the Motion to Dismiss should be denied to permit the Plaintiff an opportunity for discovery of these claims.

I think on the face of it there's certainly a reasonable question about the ultimate ability of the Plaintiff to establish liability against these individuals on the theories outlined. Nevertheless, the ultimate decision about those claims is when it's going to be fact based.

And in reviewing the pleadings in the light most favorable to the Plaintiff, as the Court is constrained to do, at this point, I'm persuaded that the Plaintiff should be permitted to continue.

Appellants contend that the district court erred in denying their motion to dismiss.

I.

Grose was formerly incarcerated at a Michigan Department of Corrections boot camp called the "Special Alternative Incarceration Women's Program," an alternative to traditional incarceration. On November 19, 2004, she fell from her top bunk directly onto her knees, fracturing both knees. Grose immediately reported difficulty bending her knees. She continued to complain of pain and discomfort on November 28, 2004, November 29, 2004, and December 2, 2004. The medical providers who treated Grose worked for CMS, which provides medical care at MDOC prisons and camps by contract. Regrettably, the medical providers repeatedly misdiagnosed her only with "overuse syndrome" and recommended that she resume boot camp activities, take Motrin for pain relief, and sleep on the bottom bunk. Although Grose was in pain, she was forced to participate fully in the boot camp which included running, heavy lifting, and other military-based activities. Grose was placed in a medical bunk on November 29, 2004, and told to continue taking Motrin. On December 2 and 3, she continued to report of pain. The medical providers directed Grose to return to regular boot camp activities on December 3, 2004. Five days later, Grose again complained of ankle and knee pain which she believed was due to a blood clot in her leg. In response, the physician

assistant diagnosed her with a possible infection and prescribed antibiotics. Grose persisted in reporting pain in her knees and legs, and nearly a month after her injury, an x-ray was finally scheduled. The x-ray revealed fractures in both knees, and she was medically terminated from the boot camp program.

On December 15, 2004, Grose was transferred from the boot camp to a regular prison, the Robert Scott Correctional Facility. Defendant Singhal gave her ibuprofen for pain relief and said that he would make an appointment for her to see an orthopedic specialist. Almost one month later, on January 13, 2005, Grose was finally examined by an orthopedic specialist, who confirmed that she had fractured her knees and recommended physical therapy. The orthopedic specialist found that her knee fractures were not treated promptly and subsequently would result in post-traumatic arthritis, deformity, lack of motion, and difficulty walking. A physical therapy referral was made a few weeks later.

Grose began receiving physical therapy three to four times per week. However, she continued to complain of medical neglect in February 2005. On June 22, 2005, Grose underwent bone graft surgery on her right leg. Grose alleges that following her surgery, the CMS medical providers denied follow-up care and provided only limited pain medication. Throughout her incarceration, Grose filed numerous grievances with the State Department of Corrections regarding the quality (or lack thereof) of the medical treatment she received. She was released on parole on May 2, 2005, and has since undergone multiple surgeries. Grose is now permanently disabled.

CMS is a medical provider that contracts with the Michigan prison system. Grose claims that there is a history of complaints and lawsuits against CMS for the provision of inadequate medical

care. In addition, Grose alleges that Appellants knew of CMS's inadequate provision of medical care and refused to train medical staff or to enact policies to ensure against Eighth Amendment violations of the prison's duty to provide medical care.

## II.

This Court reviews a district court's denial of a Fed. R. Civ. P. 12(b)(6) motion to dismiss *de novo*. *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995). In reviewing denials to dismiss, all allegations contained in the complaint are accepted as true, and the complaint is construed liberally in favor of the nonmoving party. *Id.* Where a defendant pursues an interlocutory appeal of denial of qualified immunity, such appeal may only be taken "if that appeal involves the abstract or pure legal issue of whether the facts alleged by the plaintiff constitute a violation of clearly established law." *Shehee v. Luttrell*, 199 F.3d 295, 299 (6th Cir. 1999) (quoting *Berryman v. Rieger*, 150 F.3d 561, 563 (6th Cir. 1998)). All facts must be viewed in the light most favorable to the plaintiff. *Id.*

Grose claims that her Eighth Amendment rights were violated by Appellants' alleged deliberate indifference to her serious medical needs. However, Appellants argue that the district court erred in denying their 12(b)(6) motion to dismiss because (1) Grose failed to establish that her constitutional rights had been violated on the facts alleged and (2) even if her rights were violated, the violation was not clearly established.

In deliberate indifference claims, plaintiffs must prove both objective and subjective culpability. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). The objective component "requires an inmate to show that the alleged deprivation is 'sufficiently serious.'" *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994)). For the

subjective component, the plaintiff must "show that prison officials had 'a sufficiently culpable state of mind.'" *Id.* (quoting *Farmer*, 511 U.S. at 834).

Appellants contest Grose's ability to satisfy the subjective component of her claim. To establish subjective culpability, the facts alleged must show that the defendants' state of mind was something "more than ordinary lack of due care for the prisoner's interests or safety." *Farmer*, 511 U.S. at 835 (quoting *Whitley v. Albers*, 475 U.S. 312, 319, 106 S. Ct. 1078, 89 L. Ed. 2d 251 (1986)). The subjective component, however, "is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* The standard is met if "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Brown*, 207 F.3d at 867 (quoting *Farmer*, 511 U.S. at 837).

In this case, Grose alleges that Appellants knew of the substantial criticisms, grievances, and legal actions taken against Defendant CMS (the contracted medical provider) because of CMS's inadequate medical care, including its alleged "misdiagnosis and delayed medical treatment of inmates in correctional institutions." Grose further claims that because Appellants knew of CMS's history of inadequate medical care, continued to contract with CMS, and failed to establish policies and training to prevent the provision of inadequate medical care, Appellants acquiesced in CMS's treatment of Grose.

This Court has held that "§ 1983 liability must be based on more than respondeat superior," and that "a supervisory official's failure to supervise, control or train the offending individual is not

actionable unless the supervisor 'either encouraged the specific incident of misconduct or in some other way directly participated in it.'" *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (quoting *Hays v. Jefferson County, Ky.*, 668 F.2d 869, 874 (6th Cir. 1982)). "At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Id.* (quoting *Hays*, 668 F.2d at 874).

Here, Grose's claim is potentially based on more than just respondeat superior. Grose contends that Appellants' failure to train implicitly authorized the conduct of the offending medical providers. Where the need for training is obvious "and the inadequacy so likely to result in the violation of constitutional rights," supervisors and policymakers "can reasonably be said to have been deliberately indifferent to the need." *Farmer*, 511 U.S. at 841 (finding that prison officials may be subject to Eighth Amendment conditions of confinement liability if they know that inmates face a substantial risk of serious harm without taking reasonable measures to abate it). We draw no conclusions here as to whether Appellants possessed sufficient subjective culpability to trigger § 1983 liability.

Certainly, as the district court remarked, "the allegations are, somewhat, generalized." However, this is not a motion for summary judgment, but rather a question of whether basic pleading requirements were met. Dismissals on the basis of qualified immunity are generally made pursuant Fed. R. Civ. P. 56 summary judgment motions, not 12(b)(6) sufficiency of pleadings motions. *See, e.g.*, *Saucier v. Katz*, 533 U.S. 194, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001); *West v. Atkins*, 487 U.S. 42, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (1988); *Perez v. Oakland County*, 466 F.3d 416 (6th Cir. 2006), *cert. denied*, 128 S. Ct. 166 (2007); *Adams v. Metiva*, 31 F.3d 375, 387 (6th Cir. 1994).

Supplemented by more detailed facts ascertained through discovery, it is possible that Grose could set forth a viable Eighth Amendment claim of deliberate indifference against Appellants. Grose has not yet had an opportunity to initiate discovery in order to develop a factual record upon which a court may then determine whether dismissal based on qualified immunity is proper. "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence . . . ." *Farmer*, 511 U.S. at 842. Questions of fact are not subject to interlocutory appeal. *Shehee*, 199 F.3d at 299. Where, as here, the standard for a 12(b)(6) motion is whether the allegations, if taken as true, could state a claim upon which relief may be granted, dismissal of Appellants on the basis of qualified immunity is premature.

As to the question of whether Grose's claimed constitutional violation is clearly established, Appellants' challenge is similarly premature. When constitutional violations are not clearly established, state officials are entitled to qualified immunity. *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001). A constitutional violation is clearly established where in the context of the acts committed "any officer in the defendant's position, measured objectively, would have clearly understood that he was under an affirmative duty to have refrained from such conduct." *Ramirez v. Webb*, 835 F.2d 1153, 1156 (6th Cir. 1987) (quoting *Dominque v. Telb*, 831 F.2d 674, 676 (6th Cir. 1987)). Where officials "of reasonable competence could disagree on whether the conduct violated the plaintiff's rights," then qualified immunity is proper. *Caldwell v. Woodford County Chief Jailor*, 968 F.2d 595, 599 (6th Cir. 1992) (quoting *Grossman v. Allen*, 950 F.2d 338, 341 (6th Cir. 1991)). The qualified immunity "inquiry . . . must be undertaken in light of

the specific context of the case, not as a broad general proposition."  *Saucier*, 533 U.S. at 201.

However, "officials can still be on notice that their conduct violates established law even in novel

factual circumstances."  *Hope v. Pelzer*, 536 U.S. 730, 741, 122 S. Ct. 2508, 153 L. Ed. 2d 666

(2002).  "[O]bvious cruelty" may also put officials on notice of an Eighth Amendment violation.

*Id.* at 745 (finding that the obvious cruelty inherent in defendants' practice of handcuffing inmates

to hitching posts for seven hours without regular water or bathroom breaks put defendants on notice

of an Eighth Amendment violation).

In this case, it is well-settled that lack of proper medical treatment can constitute an Eighth

Amendment violation.  *See West v. Atkins*, 487 U.S. 42, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988)

(finding that a physician under contract with the state to provide medical services to inmates acted

under color of law within the meaning of § 1983); *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S. Ct.

285, 50 L. Ed. 2d 251 (1976) ("[D]eliberate indifference to serious medical needs of prisoners

constitutes the 'unnecessary and wanton infliction of pain.'") (quoting *Gregg v. Georgia*, 428 U.S.

153, 173, 96 S. Ct. 2909, 49 L. Ed. 2d 859 (1976)); *Blackmore v. Kalamazoo County*, 390 F.3d 890

(6th Cir. 2004) (finding that the Eighth Amendment forbids deliberate indifference towards an

inmate's serious medical needs); *Terrance v. Northville Regional Psychiatric Hosp.*, 286 F.3d 834

(6th Cir. 2002) (imposing § 1983 liability for deliberate indifference to the medical needs of an

involuntarily committed mental patient who later died).  Upper-level prison officials may, under

certain circumstances, be held liable for deliberate indifference to the health and safety of inmates.

*See e.g.*, *Taylor v. Mich. Dept. of Corrections*, 69 F.3d 76 (6th Cir. 1995) (finding a prison warden

was not entitled to summary judgment based on qualified immunity because fact issues existed as

to whether the warden failed to take reasonable steps to ensure that vulnerable inmates would not be transferred to a facility where substantial risk of serious harm existed).  However, we need not decide the boundaries of those circumstances here.  Whether or not Appellants possessed the requisite subjective state of mind needed to trigger a clearly established constitutional violation is, as stated above, a fact-specific inquiry which is ill-suited for appellate judicial review at this time.

III.

For the foregoing reasons, we AFFIRM the decision of the district court.

**Gibbons, Circuit Judge, concurring.** As I understand Judge Keith's opinion, he concludes that resolving the issue of qualified immunity in the context of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is premature in this case because at least some of plaintiff's allegations against the state officials could be sufficient to amount to a constitutional violation that was clearly established. For this reason, he concludes that plaintiff should have an opportunity to develop her allegations through discovery. To a very limited extent, I agree and thus concur in the result. But I note further that the overall thrust of plaintiff's assertions against the state officials is that they awarded a contract to CMS when they knew or should have known about prior criticisms and claims against CMS arising from its provision of inadequate medical care to Michigan prisoners. I know of no case law giving notice to supervisory officials that they can be personally liable for the inadequacies of a medical service provider with whom they contracted. *Taylor v. Mich. Dept. of Corrections*, 69 F.3d 76 (6th Cir. 1995), on which plaintiff relies, cannot provide the requisite notice. *Taylor* relates to the failure of a warden, who had the duty of approving all transfers, to develop transfer policies to protect vulnerable inmates, a situation quite different from that alleged here. Thus, I have serious doubt that any constitutional violation that plaintiff can support through evidence developed in discovery will be a clearly established one of which a reasonable defendant would have known. Nevertheless, I concur because some of plaintiff's allegations are sufficiently imprecise that it is at least possible that she could develop a more traditional failure to train or other similar claim that could form a basis for liability.