RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 07a0381p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

HETZEL D. SEE, JR.; DARLENE SEE,

>

> *Plaintiffs - Appellees,*

*v.*

No. 06-4195

CITY OF ELYRIA,

> *Defendant,*

CHIEF MICHAEL MEDDERS,

> *Defendant - Appellant.*

---

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 03-02193—William H. Baughman, District Judge.

Submitted: July 25, 2007

Decided and Filed: September 19, 2007

Before: COLE and GILMAN, Circuit Judges; MARBLEY, District Judge.[*]

---

## COUNSEL

**ON BRIEF:** Kathryn A. Kerka, Jeffrey M. Elzeer, VALORE & CRUSE CO., Westlake, Ohio, for Appellant. Terry H. Gilbert, FRIEDMAN & GILBERT, Cleveland, Ohio, for Appellees.

---

## OPINION

---

ALGENON L. MARBLEY, District Judge. Defendant-Appellant Chief of Police Michael Medders ("Medders") brings this interlocutory appeal of the district court's denial of Medders's Motion for Summary Judgment based on qualified immunity. Pursuant to 42 U.S.C. § 1983, Plaintiff-Appellee police officer, Hetzel D. See, Jr. ("See") brought suit against Medders and the City of Elyria ("City") alleging, among other things, a violation of See's First Amendment rights when disciplinary actions were taken against him after he made statements to the FBI about

---

[*] The Honorable Algenon L. Marbley, United States District Judge for the Southern District of Ohio, sitting by designation.

activities in the police department. See's wife is a co-plaintiff on one count, claiming a loss of consortium. Medders and the City filed a Motion for Summary Judgment, which the district court granted in favor of the City, but denied with respect to Medders's assertion of qualified immunity. Specifically, the court stated that "factual disputes exist as to the truthfulness of the complaints made by Mr. See to the FBI, and so, therefore, Medders is not entitled to qualified immunity at this point as a matter of law." Medders argues that the district court erred when it inquired as to the truthfulness of the statements instead of determining whether Medders reasonably believed that See's allegations of wrongdoing were false or recklessly made. Because a genuine issue of material fact exists as to whether a reasonable official in Medders's position would have believed that See made the statements to the FBI knowing they were false, or with reckless disregard for their truthfulness, this Court **AFFIRMS** the district court's denial of summary judgment.

## I. *BACKGROUND*

### A. *Facts*

Plaintiff-Appellee See was appointed as a patrol officer for the City of Elyria Police Department on January 11, 1993. See is also a member of the Elyria Police Patrol Officer's Union, and served as union president from November 1999 to January 2003. Defendant-Appellant Medders has served as Chief of Police for the City's Police Department since December 1997.

Plaintiffs' complaint stems from two disciplinary actions taken against See for violations of various police department rules and regulations. See contends that these disciplinary actions were not taken for legitimate violations of departmental rules, but in retaliation for the following exercises of his First Amendment rights: statements made in an April 10, 2001 newspaper advertisement criticizing Chief Medders[1]; See's general activities as a union official; and – relevant to this appeal – See's 2001 statements to the Federal Bureau of Investigation ("FBI") regarding allegedly corrupt activities within the City's police department.

In April 2001, See contacted the FBI to report alleged illegal or immoral activity within the police department. Specifically, See voiced concerns about the grand jury procedures used by the department, the policies prohibiting officers from speaking to the press, the "blank check" that Medders gave to Captain Dennis Will permitting Will to work unnecessary overtime, and See's belief that Medders had manipulated results of an investigation in order to protect a public official. Lt. Larry Whitt and Officers Ben Currier and Bill Whitt also met with the FBI to discuss these activities. See followed up with the FBI on one or two more occasions. After See met with the FBI, Medders allegedly told another officer who planned to join See at the next FBI meeting that it would be negative for the department if the FBI investigated internal procedures. Medders stated that someone in the FBI revealed to him that See was making accusations against Medders's conduct in the department, and that Medders subsequently invited the FBI to review any department files without subpoena. No official resolution of See's complaint to the FBI has ever been issued, and no charges have ever been filed.

The first disciplinary action against See occurred in September 2001 when See was charged with several rule violations concerning a citizen complaint. See's behavior during the investigation of the complaint was also questioned. Medders recommended a forty-five day suspension to the Safety Service Director. After an October 15, 2001 hearing, the Director suspended See for a period of thirty days, effective November 1, 2001. See filed a grievance pursuant to a collective bargaining agreement, and the matter went to arbitration. In an August 23, 2002 opinion and award, the

---

[1]In April 2001, See took out an advertisement in the local newspaper to publish the results of a negative assessment of the police department, reflecting officers' low morale ratings and high stress.

arbitrator found that See had violated three of the four cited rules, but reduced See's suspension to fifteen days.

The second disciplinary action occurred on March 19, 2002, when two of See's supervisors submitted reports indicating that See had violated the departmental rule on insubordination after See refused a request to perform his duties as an Evidence Technician. See was formally charged on March 26, 2002, and Medders recommended that See be terminated from his employment with the City. After a disciplinary hearing, the Safety Service Director terminated See's employment on April 2, 2002. See filed a grievance and the matter went to arbitration. In a November 26, 2002 opinion and award, the arbitrator found that See had engaged in insubordination, but because See ultimately performed his duties, he did not violate rules against unbecoming conduct and unsatisfactory performance. As a result, the arbitrator reduced the termination to a thirty-day suspension. See was reinstated on December 2, 2002.

## B. *Procedural History*

On October 28, 2003, Plaintiffs-Appellees brought suit against the City and Medders, asserting a violation of See's First and Fourteenth Amendment rights. Plaintiffs filed an Amended Complaint with new counsel on October 29, 2004, setting forth seven claims for relief, including that Medders: (1) violated See's First and Fourteenth Amendment rights because he disciplined See in retaliation for See's union activities and speech on matters of public concern, and that the violations actually charged were pretextual and instituted to silence See's speech on matters of public concern; (2) chilled See's free speech rights; and (3) engaged in a conspiracy to deprive See of his constitutional rights. Plaintiffs also claimed that the policies of the City violated See's right to freedom of speech, Defendants inflicted serious emotional distress upon See, Defendants violated the Constitution of the State of Ohio, and Darlene See lost the services and consortium of her husband.

Defendants Medders and the City filed a Motion for Summary Judgment on March 3, 2006, on several grounds, including that Medders is entitled to qualified immunity. In a telephonic status conference held on August 14, 2006, the district court announced its decision denying in part and granting in part Defendants' Motion for Summary Judgment. The court found that the expressions for which See was allegedly retaliated against included: statements made in an advertisement run in the Elyria Chronicle Telegraph on April 10, 2001; general activity by See on behalf of the union; and See's complaints to the FBI in 2001. The court held that the statements related to the newspaper advertisement and the general union activity did not, as a matter of law, rise to the level of protected speech implicating See's First Amendment rights. The court, therefore, granted summary judgment to all Defendants to the extent that the retaliation claims rest on expressions made in those activities. The court went on to say that "factual disputes remain with respect to complaints to the FBI, and so summary judgment will be denied on the retaliation claims to that extent." (JA 427.)

The court held that Plaintiffs have no Fourteenth Amendment substantive due process claim apart from the First Amendment claim and that, because Medders did not have final authority to discipline See, the City had no liability under § 1983. The court, therefore, granted summary judgment in favor of both defendants with respect to the Fourteenth Amendment claims and also fully granted the City's Motion for Summary Judgment. The court concluded, however, that "[f]actual disputes exist as to the truthfulness of complaints made by Mr. See to the FBI, and so, therefore, Medders is not entitled to qualified immunity at this point as a mater of law. Summary judgment will be denied as to that." (JA 428.) The court further explained its conclusion in the telephone status conference:

> Relying on this Court's decision in *Hadad v. Croucher*, 970 F. Supp. 1227, Medders
> argues that he is entitled to qualified immunity because the statements made . . . to

the FBI were false. Judge Gallas in *Hadad* correctly pointed out that false statements do not constitute protected speech, and a public employer who takes disciplinary action in response to false statements made by an employee has qualified immunity.

[F]rom the record in the pending motion, it cannot be determined if the statements were false or not. It is probative but not dispositive that See's comments resulted in no indictments. Therefore, factual disputes remain that prevent summary judgment on the qualified immunity issue.

(JA 445.)

Medders now brings this narrow interlocutory appeal arguing that: (1) the district court applied the wrong test for qualified immunity when it focused its inquiry on the truthfulness of See's statements to the FBI instead of the reasonableness of Medders's *belief* that the statements were false; and (2) had the district court applied the correct test, it would have concluded that Medders reasonably believed that See's statements to the FBI were false or recklessly made and that See failed to meet his burden to establish that Medders is not entitled to qualified immunity. Plaintiffs argue that the district court was correct in denying qualified immunity to Medders at the summary judgment stage. Plaintiffs further assert, as a threshold issue, that because the district court did not make a determination of qualified immunity purely on a legal basis, but rather found that a question of material fact exists as to whether Medders is entitled to qualified immunity, the court's order is not appealable. In other words, Plaintiffs claim that to the extent that Medders's appeal is a mere "sufficiency of evidence disagreement," this court lacks jurisdiction to hear it on an interlocutory basis.

## II. *ANALYSIS*

### A. *Jurisdiction*

Before turning to the merits of the case, we must first address Plaintiffs' contention that this Court lacks jurisdiction to consider Medders's interlocutory appeal. *Sample v. Bailey*, 409 F.3d 689, 694 (6th Cir. 2005). This Court has jurisdiction under 28 U.S.C. § 1291 to hear an appeal only of a district court's "final decision." A district court's denial of qualified immunity is an appealable final decision within the meaning of 28 U.S.C. § 1291, notwithstanding the absence of a final judgment, but only to the extent that its decision turns on an issue of law. *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985). The *Mitchell* Court explained this now well-settled principle:

In some cases, [the denial of summary judgment on the basis of qualified immunity] may represent the trial court's conclusion that even if the facts are as asserted by the defendant, the defendant's actions violated clearly established law and are therefore not within the scope of the qualified immunity. In such a case, there will be nothing in the subsequent course of the proceedings in the district court that can alter the court's conclusion that the defendant is not immune. Alternatively, the trial judge may rule only that if the facts are as asserted by the plaintiff, the defendant is not immune. At trial, the plaintiff may not succeed proving his version of the facts, and the defendant may thus escape liability. Even so, the court's denial of summary judgment finally and conclusively determines the defendant's claim of right not to stand trial on plaintiff's allegations, and because "[t]here are simply no further steps that can be taken in the District Court to avoid the trial the defendant maintains is barred," it is apparent that . . . [the] "requirement of a fully consummated decision is satisfied" in such a case.

*Id.* at 527 (quoting *Abney v. United States*, 431 U.S. 651, 659 (1977)). Pursuant to *Mitchell*, therefore, "federal appellate courts have jurisdiction to hear interlocutory appeals considering 'the

legal question of qualified immunity, i.e., whether a given set of facts violates clearly established law.'" *Farm Labor Org. Comm. v. Ohio State Highway Patrol*, 308 F.3d 523, 531 (6th Cir. 2002) (quoting *Mattox v. City of Forest Park*, 183 F.3d 515, 519 (6th Cir. 1999)); *see also Berryman v. Rieger*, 150 F.3d 561, 563 (6th Cir. 1998) ("A defendant who is denied qualified immunity may file an interlocutory appeal with this Court only if that appeal involves the abstract or pure legal issue of whether the facts alleged by the plaintiff constitute a violation of clearly established law.")

Conversely, "a district court's determination that there exists a triable issue of fact *cannot* be appealed on an interlocutory basis, even when the finding arises in the context of an assertion of qualified immunity." *Gregory v. City of Louisville*, 444 F.3d 725, 742-43 (6th Cir. 2006) (citing *Johnson v. Jones*, 515 U.S. 304, 313 (1995) ("[A] defendant, entitled to invoke a qualified immunity defense, may not appeal a district court's summary judgment order insofar as that order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial."). "To do so would interject appellate review into a district court's determination that the evidence is sufficient for trial, a nonfinal adjudication for purposes of 28 U.S.C. § 1291 . . . ." *Id.* Under *Johnson*, therefore, a determination that a given set of facts violates clearly established law is reviewable, while a determination that an issue of fact is "genuine" is unreviewable. *Johnson*, 515 U.S. at 311, 323.

That the district court here denied Medders's Motion for Summary Judgment on the grounds that genuine issues of material fact exist does not necessarily foreclose this Court's jurisdiction over Medders's appeal. Rather, "*regardless of the district court's reasons* for denying qualified immunity, [this Court] may exercise jurisdiction over the [defendant's] appeal to the extent it raises questions of law." *Williams v. Mehra*, 186 F.3d 685, 689-90 (6th Cir. 1999) (en banc) (quoting *Dickerson v. McClellan*, 101 F.3d 1151, 1157 (6th Cir. 1996)); *see also Gregory*, 444 F.3d at 742-43 ("To the extent that an appellant on an interlocutory appeal argues issues of fact and law on appeal, this Court will only entertain pure issues of law.").

Appellate jurisdiction exists in this case. Although there remain controverted questions of fact (with respect to (a) the truth or falsity of See's statements, and (b) Medders' belief in the truth or falsity of such statements), ultimately these facts are not relevant to the fundamental qualified immunity question. The parties do not dispute the basic facts surrounding See's statements to the FBI and the subsequent disciplinary proceedings. Medders's main challenge goes to the purely legal issue of *how* to apply the doctrine of qualified immunity with respect to a First Amendment retaliation claim (i.e., whether the district court should have inquired as to the truthfulness of See's statements to the FBI). In other words, "[t]he only 'facts' in dispute are the ultimate issues to be decided by applying law to the basic facts." *Williams*, 186 F. 3d at 690. Namely, did Medders violate See's established constitutional rights? Were these rights not clearly established such that a reasonable officer in Medders's position would have acted in a similar manner? "These 'facts,' however, are mixed issues of law and fact, which we treat as issues of law, not issues of fact." *Id.* (citing *Whitney v. Brown,* 882 F.2d 1068, 1071 (6th Cir. 1989)). Appellate review is, therefore, appropriate.[2]

## B. *Standard of Review*

This Court reviews de novo a district court's denial of summary judgment on qualified immunity grounds, "because the determination of whether qualified immunity is applicable to an official's actions is a question of law." *Farm Labor*, 308 F.3d at 532. Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

---

[2]This Court notes that "even if the parties were not in agreement on the facts, we still would have jurisdiction to decide the legal question of qualified immunity – i.e., whether assuming the plaintiffs' version of the facts to be true, the plaintiffs have shown a violation of their clearly established constitutional rights." *Farm Labor*, 308 F.3d at 531 n.3.

party is entitled to judgment as a matter of law."　Fed. R. Civ. P. 56(c).　The party moving for summary judgment has the burden of proof and must demonstrate that there is no genuine issue of material fact.　*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).　A genuine issue for trial exists when there is sufficient "evidence on which the jury could reasonably find for the plaintiff."　*Anderson v. Liberty Lobby, Inc.*, 447 U.S. 242, 252 (1986).　In reviewing a decision on a motion for summary judgment, we view the factual evidence and draw all reasonable inferences in favor of the non-moving party.　*Williams*, 186 F.3d at 689.

### C. *Qualified Immunity*

Under the doctrine of qualified immunity "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."　*Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).　Accordingly, "whether an official 'may be held personally liable for an allegedly unlawful official action generally turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken."　*Poe v. Haydon*, 853 F.2d 418, 422 (6th Cir. 1988) (quoting *Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (internal citation omitted)).　If a government official is granted qualified immunity, he or she is immune from suit over the asserted claim.　*Haynes v. City of Circleville,* 474 F.3d 357, 362 (6th Cir. 2007).　The plaintiff carries the burden of proof to show that the defendant is not entitled to qualified immunity.　*Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991).

In determining whether an officer is entitled to qualified immunity, this Court applies a two-step inquiry: "(1) whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated, and (2) whether that right was clearly established."　*Swiecicki*, 463 F.3d at 497-98 (quoting *Estate of Carter v. City of Detroit,* 408 F.3d 305, 310-11 (6th Cir.2005)).　In *Anderson v. Creighton*, the Supreme Court explained the level of generality at which legal rights are "clearly established":

> [O]ur cases establish that the right the official is alleged to have violated must have been "clearly established" in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected unless the very action in question has previously been held unlawful, but it is to say that in the light of preexisting law the unlawfulness must be apparent.

*Anderson*, 483 U.S. at 640 (internal citations omitted).　The relevant inquiry in this case, therefore, is: (1) whether the facts alleged demonstrate a violation of See's First Amendment right, and, if so, (2) whether, objectively, a reasonable official in Medders's position could have believed his conduct to be lawful, considering the state of the law as it existed when he took his challenged actions.　*See Poe*, 418 F.2d at 423-24.

#### 1. *First Amendment Violation*

See claims that Medders violated his First Amendment rights by discharging him in retaliation for making statements to the FBI regarding alleged wrongdoing in the City's police department.　In order to state a First Amendment retaliation claim, a public employee must point to evidence sufficient to establish three elements:

> First, the employee must establish that his speech is protected.　To accomplish this, the employee must show that his speech touches on a matter of public concern, *Connick v. Myers*, 461 U.S. 138, 147 (1983), and demonstrate that his interest in the

speech outweighs the government's countervailing interest in promoting the efficiency of the public service it provides as an employer. *Pickering v. Bd. of Ed. of Twp. High School Dist. 205*, 391 U.S. 569, 574 (1968). This determination is a question of law for the court to decide. *Connick*, 461 U.S. at 148 n.10. Second, the employee must show that the employer's adverse action would chill an ordinary person in the exercise of his First Amendment rights. *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1048 (6th. Cir. 2001). Finally, the employee must present sufficient evidence to create a genuine issue as to whether his speech was a substantial or motivating factor in the employer's decision to discipline or dismiss. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977).

*Taylor v. Keith*, 338 F.3d 639, 643 (6th Cir. 2003) (full case citations added).

In this Circuit, "[a] matter of public concern usually involves a matter of political, social, or other concern to the community." *Jackson v. City of Columbus*, 194 F.3d 737, 746 (6th Cir. 1999). The rationale for protecting a public employee's right to comment on matters of public concern is that "public employees are often the members of the community who are likely to have informed opinions as to the operations of their public employers, operations which are of substantial concern to the public." *City of San Diego v. Roe*, 543 U.S. 77, 82 (2004). Further, it does not matter if the employee's suspicions were subsequently shown to be correct, as long as the statements were of public concern and not false statements deliberately or recklessly made. *See Pickering*, 391 U.S. at 574; *Farhat v. Jopke*, 370 F.3d 580, 591 (6th Cir. 2004) ("Although First Amendment protection might not be available if the employer can show that the public employee knowingly or recklessly made false statements, a public employee is not required to prove the truth of his or her speech in order to secure the protections of the First Amendment.") (citing *Rodgers v. Banks*, 344 F.3d 587, 601 n. 5 (6th Cir. 2005) ("We note that even if Plaintiff's opinion ultimately proved to be incorrect, this does not deprive her statements of First Amendment protection."); *Chappel v. Montgomery County Fire Prot. Dist. No. 1*, 131 F.3d 564, 576-77 (6th Cir. 1997) (rejecting defendants' argument that employee's speech alleging corruption and unethical conduct cannot address matters of public concern absent proof of the truthfulness of his speech)).

If the speech at issue is found to be a matter of public concern, this Court must then determine whether the plaintiff's First Amendment interests outweigh the defendant's interest as an employer "in promoting the efficiency of the public services it performs through its employees." *Pickering*, 391 U.S. at 568. In striking the balance, this Court has analyzed several factors including whether the speech:

> related to an issue of public interest and concern; was likely to foment controversy and disruption; impeded the department's general performance and operation; affected loyalty and confidence necessary to the department's proper functioning; subverted department discipline; was false and the employer could not have easily rebutted or corrected the errors; and was directed toward a person whom the speaker normally contacted within the course of daily work.

*Solomon v. Royal Oak Twp.*, 842 F.2d 862, 865 (6th Cir. 1988) (citing *Pickering*, 391 U.S. at 569-73). Therefore, although the truthfulness of the employee's statements is not relevant in determining whether the speech involves a matter of public concern (unless, of course, the employee intentionally or recklessly made false statements), the truthfulness of such statements may be relevant – *as one factor* – in striking the appropriate balance between the employee's right to free speech and the employer's interest in efficient administration.

This Court finds that, as a matter of law, See engaged in constitutionally protected activity. The matters See spoke about to the FBI, for which he alleges retaliation, were matters of public

concern as they involved alleged corruption in police department investigations, grand jury procedures, funding, and dealing with the press. Statements exposing possible corruption in a police department are exactly the type of statements that demand strong First Amendment protections. *See Solomon*, 842 F.2d at 865-66 ("[S]peech disclosing public corruption is a matter of public interest and, therefore, deserves constitutional protection.") (citing *McMurphy v. City of Flushing*, 802 F.2d 191, 196 (6th Cir. 1986) ("Obviously, the public is concerned with how a police department is operated, and efforts to give public exposure to alleged misconduct are protected."); *Marohnic v. Walker*, 800 F.2d 613, 616 (6th Cir.1986) ("[p]ublic interest is near its zenith when ensuring that public organizations are being operated in accordance with the law"); *O'Brien v. Town of Caledonia*, 748 F.2d 403, 407 (7th Cir.1984) ("[a police officer's] perception of potential graft and corruption is deserving of vigilant protection by the First Amendment"); *Brockell v. Norton*, 732 F.2d 664, 668 (8th Cir. 1984) ("The public has a vital interest in the integrity of those commissioned to enforce the law."); *Rookard v. Health and Hosps. Corp.*, 710 F.2d 41, 46 (2d Cir. 1983) ("An allegation of corrupt and wasteful practices at a large municipal hospital, made to the city official empowered to investigate such charges, obviously involves a matter of public concern.")). Further, there is no evidence – and Medders does not assert – that See's statements to the FBI were, in fact, deliberately or recklessly false and, therefore, outside First Amendment protections.

In balancing the interests, we conclude that the City's interest in promoting the efficiency of the public services it provides does not sufficiently outweigh See's First Amendment right to disclose allegations of misconduct within the department to the FBI. Other than Medders's own statement to another officer that an FBI investigation would affect police department morale, there is no evidence that See's complaints to the FBI actually impeded the police department's general performance and operation or affected loyalty and confidence necessary to the department's proper functioning.

Medders's main contention is the fact that the district court looked to the actual truthfulness of See's statements instead of looking only to Medders's belief regarding the statements' veracity. Although an officer's reasonable belief regarding the statements is relevant in the second prong of the qualified immunity analysis, discussed below, such examination is not proper here. Instead, absent deliberate or recklessly false statements, the accuracy of the statements is relevant only in balancing the interests of See's right to free speech and Medders's right to efficient governance of the department. Therefore, to the extent that the lower court inquired into the truthfulness of See's statements to the FBI in analyzing whether See's statements are protected by the First Amendment, its inquiry was proper. Indeed, the court specifically stated that although the *Pickering* balancing, in which the truthfulness of the speech is relevant, "is a question of law for the Court, See's motivation goes to his credibility. To the extent that there are factual issues within and relating to such balancing, there may be some questions that have to be sorted out for the jury." (JA 441.) The court also explained that although the record on the substance of See's discussion with the FBI is sparse,

> "[e]nough has been provided to create a factual dispute as to whether See made allegations of criminal activity sufficient to raise a matter of public concern. It may well be after See has testified as to the details of his disclosures, the substance may not as a matter of law be sufficient, but that can be addressed by a motion for judgment as a matter of law made at trial."

(JA 440.)

Having concluded that there is a genuine issue of material fact as to whether See's speech is constitutionally protected as a matter of public concern that outweighs Medders's interests as police chief, we next examine the remaining factors of the retaliation analysis. As for the second retaliation prong, as a matter of law – and the parties do not dispute – See undeniably suffered an

adverse action that would chill the free speech rights of an ordinary person. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 396 (6th Cir. 1999) (discharge is a type of adverse action in the employment context). Finally, Medders does not argue on appeal that See's discharge was not motivated, at least in part, by the FBI complaints. Nor does Medders assert on appeal that he would have fired See even if the statements had not been made.[3]

Plaintiff has sufficiently alleged conduct by Medders that, if proven true, would constitute a violation of his well-established First Amendment rights. Therefore, for qualified immunity purposes, the question becomes whether the right was so clearly established that, in this specific situation, Medders's actions were objectively unreasonable.

## 2. *Reasonableness of Action in Light of Clearly Established Right*

Medders asserts that even if See establishes a constitutional violation, as long as Medders reasonably believed that See's statements to the FBI were false, Medders retains the benefit of qualified immunity, regardless of whether the statements were actually false. Medders's argument is without merit.

Medders correctly states the proposition that an official who reasonably believes that an employee deliberately or recklessly made false statements could also reasonably conclude that such employee could be disciplined without violating the First Amendment. *See Pickering*, 391 U.S. at 574 (declining to extend protection to false statements that are knowingly or recklessly made); *Gossman v. Allen*, 950 F.2d 338, 342 (6th Cir. 1991). The inquiry is not whether the employee actually made false statements knowingly or recklessly, but whether a reasonable official could believe that he had done so. *Gossman,* 950 F.2d at 342. Because the standard is based on a reasonable official, Medders's subjective intent is not relevant. *Poe*, 853 F.2d at 431. In *Gossman*, this Court explained:

> [W]e need only decide whether a reasonable official could believe that [the plaintiff] knowingly or recklessly made false statements. If an official reasonably believes that an employee made statements with knowledge of, or reckless indifference to, their falsity, the official would conclude that the employee could be fired without offending the First Amendment. Qualified immunity would therefore attach.

*Gossman*, 950 F.2d at 342; *see also Hadad v. Croucher*, 970 F. Supp. 1227, 1243 (N.D. Ohio 1997). Medders errs, however, in his leap from the principles stated in *Gossman* to his assertion that where Medders reasonably believed that the statements made by See to the FBI were false (without regard to whether Medders reasonably believed that *See knew of, or had reckless indifference to their falsity*), the truth of the statements is irrelevant and Medders is entitled to qualified immunity. To be sure, the district court must address the reasonableness of Medders's belief when analyzing qualified immunity – but the inquiry should be focused on his reasonable belief in whether See knowingly or recklessly made false statements, not on the reasonableness of his own belief in whether See made false statements.

Here, a genuine issue of material fact exists as to whether a reasonable official could have believed the allegations in See's statements were knowingly or recklessly false, and, therefore, whether discipline in retaliation for such statements would violate a clearly established constitutional right. As laid out above, at the time of See's discipline, a public employee's right to speak on

---

[3]Once a plaintiff establishes the necessary elements of a retaliation case, the defendant may demonstrate "that it would have taken the same action even in the absence of the protected conduct." *Jackson v. Leighton*, 168 F.3d 903, 909 (6th Cir. 1999); see also *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977). This is not argued on appeal.

matters of public concern without facing improper government retaliation was settled: such statements are protected, even if later proven untrue, as long as they are not deliberately or recklessly false. *Zilich v. Longo*, 34 F.3d 359, 365 (6th Cir. 1994) ("The law is well settled in this Circuit that retaliation under color of law for the exercise of First Amendment rights is unconstitutional, and "retaliation claims" have been asserted in various factual scenarios."); *Chappel*, 131 F.3d at 580 ("All public officials have been charged with knowing that public employees may not be disciplined for engaging in speech on matters of public concern . . . .") Medders may lay claim to qualified immunity only if a reasonable official could have believed See's statements were knowingly or recklessly false.

Medders asserts that once he found out that See went to the FBI about alleged wrongdoing, he invited the FBI to review the department files because he believed that See's statements were unfounded. Again, Medders's subjective belief is not the test. The test is whether Medders believed that See made the statements knowing that they were false or with reckless indifference to their falsity. See has met his burden of establishing that Medders is not entitled to qualified immunity. First, See testified in his deposition and affidavit that he, *and other officers*, went to the FBI because he genuinely believed that Medders had compromised an investigation and that several of the department's policies and practices were unlawful. That there was more than one complainant makes it less likely that they were all intentionally or recklessly lying to the FBI. Second, Medders stated in his affidavit that although he "knew the other statements of Officer See to be false," he felt that See's allegations about the grand jury presentation procedure had no merit because Medders knew the department's procedures were very similar to those in other police departments. Thus, Medders himself believed at least one of See's statements to be factually true, though not stating any misconduct actionable by the FBI.

In light of the analysis above, the facts asserted by both parties, and See's clearly established constitutional rights, we conclude that a genuine issue of material fact exists as to whether Medders' actions were objectively unreasonable. The district court, therefore, correctly denied Medders's Motion for Summary Judgment on the basis of qualified immunity with respect to Plaintiffs' First Amendment claims regarding the FBI statements.

## III. *CONCLUSION*

For the foregoing reasons, we **AFFIRM** the district court's order denying summary judgment to Medders on his assertion of qualified immunity.