RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 12a0108p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

LINDSEY WHITNEY,

                *Plaintiff-Appellee,*

    *v.*

CITY OF MILAN, a Municipal Corporation,

                *Defendant,*

CHRIS CRIDER, Mayor, in his Individual and
Official Capacities,

                *Defendant-Appellant.*

No. 11-5261

Appeal from the United States District Court
for the Western District of Tennessee at Jackson.
No. 09-01127—J. Daniel Breen, District Judge.

Argued: March 1, 2012

Decided and Filed: April 24, 2012

Before: COLE and STRANCH, Circuit Judges; CARR, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Geoffrey Andrew Lindley, RAINEY, KIZER, REVIERE & BELL, PLC, Jackson, Tennessee, for Appellant. Charles H. Barnett, III, SPRAGINS, BARNETT & COBB, PLC, Jackson, Tennessee, for Appellee. **ON BRIEF:** Dale Conder, Jr., RAINEY, KIZER, REVIERE & BELL, PLC, Jackson, Tennessee, for Appellant. Charles H. Barnett, III, Teresa A. Luna, SPRAGINS, BARNETT & COBB, PLC, Jackson, Tennessee, for Appellee.

---

[*]The Honorable James G. Carr, Senior United States District Judge for the Northern District of Ohio, sitting by designation.

1

———————————

**OPINION**

———————————

COLE, Circuit Judge.  Defendant-Appellant Chris Crider, the mayor of the City of Milan, appeals the district court's denial of qualified immunity.  Because Crider prohibited one of his employees from speaking about matters of public concern, in violation of the employee's clearly established First Amendment rights, we AFFIRM the denial of qualified immunity.

I.

Plaintiff-Appellee Lindsey Whitney has been an employee of the City of Milan, Tennessee ("the City") since 2006, when she was first hired to work in the City's street department.  The following year, in addition to this job, Whitney began training for a position at City Hall under the supervision of the then-City Recorder, Keri Williams.  Whitney and Williams have a strong personal relationship; their families socialize together, their children are close friends and attend day care together, and Williams was Whitney's landlord.  In July 2008, based on a recommendation from Williams, Crider assigned Whitney to a deputy clerk position in the city court clerk's office.

A few months later, on September 12, 2008, the City fired Williams.  Later that day, Crider, aware of the close relationship between Williams and Whitney, summoned Whitney to his office.  Crider ordered Whitney to end all contact with Williams.  Crider told Whitney not to call or text Williams, forbade her from "promoting" any allegations Williams may raise against the City, and specifically ordered her not to participate in or assist with any lawsuit Williams might bring against the City.  Crider later followed up with Whitney three or four times, asking her whether she had been in communication with Williams.  Following Williams's termination, Whitney was concerned about her own job security and believed that if she violated Crider's orders and communicated with Williams, she would lose her job.  The following month, Williams, in fact, did file

suit against the City, alleging gender discrimination and retaliation for speaking out against alleged acts of public corruption.

In May 2009, Whitney filed suit against Crider and the City under 42 U.S.C. § 1983, alleging, *inter alia*, violations of her rights under the First and Fourteenth Amendments. Although Whitney claimed constitutional violations including interference with freedom of association, assembly, and the right to intimate association as well as retaliation for protected speech, the sole remaining allegation is her First Amendment prior-restraint claim against Crider. Crider moved for summary judgment on this prior-restraint claim on the basis of qualified immunity. The district court denied Crider's motion and Crider timely filed an interlocutory appeal.

## II.

### A. Jurisdiction and Standard of Review

As a threshold matter, this Court has jurisdiction to consider Crider's interlocutory appeal because "a district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291 . . . ." *Sample v. Bailey*, 409 F.3d 689, 694 (6th Cir. 2005) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985)). Crider appeals the district court's order which denied his motion for summary judgment on the basis that he violated a clearly established constitutional right, and as such, is not entitled to qualified immunity. Whether Crider's order violated clearly established law is purely a legal question over which we have jurisdiction. *See Turner v. Scott*, 119 F.3d 425, 427 (6th Cir. 1997) ("A denial of qualified immunity on purely legal grounds is immediately appealable.") Furthermore, we review de novo the district court's summary judgment determination on the grounds of qualified immunity, *Sample*, 409 F.3d at 695, and "construe the evidence and draw all reasonable inferences in favor of" Whitney, the nonmoving party, *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 332 (6th Cir. 2008) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

*B. Qualified Immunity on a Prior-Restraint Claim*

Government officials are immune from civil liability under 42 U.S.C. § 1983 when performing discretionary duties, provided "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). We apply a two-pronged test to determine whether qualified immunity shields a government official from a § 1983 claim: (1) we inquire whether the facts, viewed in the light most favorable to the nonmoving party, "show[] the officer's conduct violated a constitutional right;" and (2) if so, then we determine whether the constitutional right was clearly established by asking whether "a reasonable official would understand that what he is doing violates that right." *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001), *abrogated in part by Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

In applying the first prong of the *Saucier* test, we first must identify "the specific constitutional right allegedly infringed" and determine whether a violation occurred. *Graham v. Connor*, 490 U.S. 386, 394 (1989). As Whitney raised a First Amendment prior-restraint claim, we apply the two-part *Pickering* analysis to determine whether Crider's order was an unconstitutional prior restraint of a public employee's speech. *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968); *Farhat v. Jopke*, 370 F.3d 580, 598 (6th Cir. 2004). First, we determine whether the affected speech involved a public employee's comments as a private citizen on a matter of public concern. *See Farhat*, 370 F.3d at 588, 598. Second, if the speech involves a matter of public concern, then we must balance the interests of the public employee, "as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Connick v. Myers*, 461 U.S. 138, 140 (1983) (quoting *Pickering*, 391 U.S. at 568).

The district court, to simplify its *Pickering* and *Saucier* analysis, divided the prior restraint into three categories of speech and separately analyzed each category. The court considered Crider's order to consist of three restraints: (1) barring Whitney's personal communication with Williams, (2) proscribing Whitney from promoting any

allegations Williams may raise against the City, and (3) prohibiting Whitney's participation in Williams's lawsuit against the City. We find no meaningful difference between the second and third categories. Crider's order prohibiting Whitney from promoting allegations of gender discrimination and public corruption and his order prohibiting participation in a lawsuit raising these claims are one and the same. To participate in a lawsuit exposing workplace discrimination and local government corruption is one of the many means by which Whitney could promote Williams's allegations against the City. Accordingly, Crider's orders against promoting Williams's allegations and participating in Williams's lawsuit are part and parcel of the same restriction.

The first *Pickering* prong requires us to determine whether Crider's order prevented Whitney from speaking as a private citizen on a matter of public concern. To be deemed a matter of public concern, the speech must "relat[e] to any matter of political, social, or other concern to the community . . . ." *Id.* at 146. As the district court correctly noted, to the extent Crider's order interfered with Whitney's personal communications with Williams, that speech is not a matter of public concern. Thus, Crider's order restricting such speech does not amount to a First Amendment violation under *Pickering*. Therefore, with respect to restricting personal communications, the district court was correct to grant qualified immunity because Whitney was unable to establish a violation of her constitutional rights and, therefore, unable to carry her burden "to demonstrate that [Crider was] not entitled to qualified immunity." *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006).

Crider's order did, however, restrict private-citizen speech on a matter of public concern when he prohibited Whitney from promoting Williams's allegations, including barring her participation and assistance in a lawsuit exposing those claims. Speech touches upon a matter of public concern "when it involves issues about which information is needed or appropriate to enable the members of society to make informed decisions about the operation of their government." *Brandenburg v. Hous. Auth. of Irvine*, 253 F.3d 891, 898 (6th Cir. 2001) (internal quotation marks and citations

omitted).  "[S]peech falling into this category includes informing the public that a governmental entity failed to 'discharg[e] its governmental responsibilities' or 'bring[ing] to light actual or potential wrongdoing or breach of public trust [on the part of a governmental entity or any officials therein.]"  *Rodgers v. Banks*, 344 F.3d 587, 596 (6th Cir. 2003) (quoting *Connick*, 461 U.S. at 148) (first alteration added).  Allegations of public corruption and discrimination are, therefore, inherently of public concern.  *See See v. City of Elyria*, 502 F.3d 484, 493 (6th Cir. 2007) ("The matters [the plaintiff] spoke about . . . were matters of public concern as they involved alleged corruption in [a governmental] department . . . ."); *Jackson v. City of Columbus*, 194 F.3d 737, 747 (6th Cir. 1999) ("[T]he [speech] involved allegations of corruption and abuse of power . . . . [and] such social and political issues are generally matters of public concern."), *abrogated on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002); *see also Kindle v. City of Jeffersontown*, 374 F. App'x 562, 568 (6th Cir. 2010) ("This court has consistently held that speech on . . . the efficacy and operations of public agencies and allegations of misconduct by public officials . . . addresses a matter of public concern."); *Miller v. City of Canton*, 319 F. App'x 411, 416 (6th Cir. 2009) ("Allegations of racial discrimination by a public entity 'inherently' involve a matter of public concern.").

Because the affected speech involved a matter of public concern, *Pickering* next requires us to balance Whitney's interests, "as a citizen, in commenting upon matters of public concern and [Crider's interests], as an employer, in promoting the efficiency of the public services it performs through its employees."  *Connick*, 461 U.S. at 140 (quoting *Pickering*, 391 U.S. at 568) (internal quotation marks omitted).  Crider contends that restricting Whitney's speech was an appropriate means of preventing the workplace disruption that occurs when a current employee fraternizes with a former, disgruntled employee.  Although a government employer may take steps to ensure workplace harmony and need not "allow events to unfold to the extent that the disruption of the office and the destruction of working relationships is manifest before taking action[,] . . . . a stronger showing [from the employer] may be necessary if the employee's speech . . . substantially involved matters of public concern."  *Id.* at 152; *see also Leary*

*v. Daeschner*, 228 F.3d 729, 737-38 (6th Cir. 2000) ("[I]f an employee's speech substantially involved matters of public concern, an employer may be required to make a particularly strong showing that the employee's speech interfered with workplace functioning before taking action.") (internal quotation marks and citation omitted).

Crider's interest in restricting Whitney's speech on matters of public concern does not rise to this elevated standard, as he subjected her to an indefinite gag order without any showing that Whitney had previously caused disruptions in the workplace. "To justify suppression of free speech there must be reasonable ground to fear that serious evil will result if free speech is practiced." *United States v. Nat'l Treasury Emps. Union*, 513 U.S. 454, 475 (1995) (quoting *Whitney v. California*, 274 U.S. 357, 376 (1927) (Brandeis, J., concurring)). Crider's speculative concerns of workplace disharmony are insufficient to overcome Whitney's interest in speaking as a private citizen on a matter of public concern.

As Whitney's interest in speaking on a matter of public concern outweighs Crider's opposing interest, she has satisfied both prongs of the *Pickering* test. Because Crider violated Whitney's constitutional right, he is entitled to qualified immunity only if the right was not clearly established such that "a reasonable official would understand that what he is doing violates" the First Amendment. *Saucier*, 533 U.S. at 202. Therefore, we must determine "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation that he confronted." *Solomon v. Auburn Hills Police Dep't*, 389 F.3d 167, 172 (6th Cir. 2004) (quoting *Saucier*, 533 U.S. at 202). The speech Crider prevented was of significant interest to the public and we have consistently protected a public employee's right to discuss issues of public corruption and workplace discrimination. Our precedent is clear that speech regarding these issues implicates matters of public concern. *See Kindle*, 374 F. App'x at 567-68 (finding speech regarding misuse of taxpayer money involved a matter of public concern); *City of Elyria*, 502 F.3d at 493 (finding speech involving uncovering public corruption to address matters of public concern); *see also Miller*, 319 F. App'x at 416 (finding that speech exposing public corruption and racial discrimination involved a matter of public

concern); *Jackson*, 194 F.3d at 747 (finding gag order preventing an employee from speaking about alleged racial discrimination within the police department constituted a matter of public concern).  "[T]he greater the speech's relationship to a matter of public concern and the more minimal the effect on office efficiency[,] the more likely a reasonable person would be to understand that the employer's actions violated the Constitution."  *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 263 (6th Cir. 2006).  Here, Whitney's right to speak publicly and participate in a lawsuit addressing workplace discrimination and public corruption in the City's government was clearly established.  Therefore, Crider is not entitled to qualified immunity.

III.

The district court's denial of Crider's motion for summary judgment on the basis of qualified immunity is AFFIRMED.