NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0096n.06

Case No. 13-3531

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Feb 04, 2014
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| RICHARD KOLLIN, JR., Administrator of the Estate of Richard Kollin, Sr., Deceased, | ) ) ) | |
| Plaintiff-Appellee, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT |
| v. | ) ) | COURT FOR THE NORTHERN DISTRICT OF OHIO |
| CITY OF CLEVELAND, et al., | ) ) | |
| Defendants, | ) ) | O P I N I O N |
| and | ) ) | |
| SERGEANT BRIAN CARNEY, | ) ) | |
| Defendant-Appellant. | ) | |

BEFORE: COLE, GILMAN, and DONALD, Circuit Judges.

COLE, Circuit Judge. Richard Kollin, Sr.'s estate sued Sergeant Brian Carney after Kollin died of complications from a stroke he suffered just before Carney arrested him. The district court denied Carney summary judgment based on qualified immunity, finding that a genuine dispute of material fact existed as to whether Carney was deliberately indifferent to Kollin's serious medical needs. Because the district court relied on facts not blatantly contradicted by the record, and Carney's sole legal argument relies on his own version of the facts, we dismiss the appeal for lack of jurisdiction.

## I. BACKGROUND

In this interlocutory appeal, where our jurisdiction is narrow, this court takes the facts as alleged by the estate. *See Estate of Carter v. City of Detroit*, 408 F.3d 305, 307 (6th Cir. 2005). Many of the following facts are disputed.

While driving home from work in October 2009, Richard Kollin, Sr. had a stroke and rear-ended a taxi. A Cleveland Police Department traffic-crash report indicates that the accident occurred at 8:02 p.m. and that Officers Ranell Thompson and Alcenia Small arrived at the scene at 8:15 p.m. Thompson and Small later testified that by the time they arrived, Kollin had been arrested, handcuffed, and placed in the back of Carney's squad car. Carney arrested Kollin for driving under the influence of alcohol or drugs. Carney claims that he arrested Kollin because Kollin smelled of alcohol and failed three field sobriety tests, purportedly witnessed by Thompson. Thompson testified that he did not witness any field sobriety tests and, despite being in close proximity for thirty minutes, never smelled alcohol on Kollin.

A form referring Kollin for hospital service was filled out at 8:15 p.m. by someone named "Alicea," and it states that Kollin was referred because he "[could not] stand up" and was "incoherent." The estate argues that Carney, identified on the form by his badge number, made the request from the accident scene to a jail employee named Alicea, who then filled out the form. The form also indicates that the arrest occurred at 8:15 p.m.

Thompson and Small transferred Kollin from Carney's car to theirs and took him to central booking. They arrived at central booking sometime between 8:30 p.m. and 8:50 p.m. Kollin walked from Carney's car to Thompson and Small's car and then to central booking, but with some difficulty. A form filled out later that evening by a hospital physician states that "per the police officer accompanying" Kollin to the hospital, Kollin "could walk up the stairs at the

police station and was talking," but by 8:30 p.m. "he began to look to the right and he had left hemiparesis."

Once at central booking, Small and Thompson brought Kollin directly to the booking counter. The officer booking Kollin testified that he was placed in a wheelchair within five minutes of arriving, and the officer remembered him years later because during the booking process Kollin "never opened his mouth to speak a word." That officer also took Kollin's picture, which shows Kollin sitting, gazing to the right with half-shut eyes and his left arm dropped to the side. The estate argues that the photograph shows Kollin with a facial and left-sided droop, which it claims is indicative of a stroke rather than intoxication. Carney and others testified that Kollin's appearance in the booking picture was the same as his appearance at the accident scene. After being booked, Kollin was taken to the breathalyzer. Carney tried to give Kollin the breathalyzer test at 9:15 p.m., but Kollin could not blow properly into the machine.

Around 9:43 p.m., an ambulance was called for Kollin. EMS reached Kollin at 9:57 p.m. A report filled out by the responding EMS personnel states that the caller requested EMS because Kollin was "unresponsive" and "incoherent," that EMS found Kollin "sitting in wheelchair," and that Kollin's "history of present illness/injury" was the "past 1 hr." EMS observed that Kollin had a "fixed gaze," a "facial droop," and that his left arm was completely paralyzed. The report's narrative states as follows:

> Per [Cleveland Police Department]; pt was arrested for a DUI aprx 1 hour [prior to arrival]. Then aprx 45 min [prior to arrival] pt started having worse slurred speech than when arrested and started staring to his right side as in a rt side gaze which he continued O/S and length of entire run. Pt was ambulatory upon arrest and going into jail. Pt found sitting semiconscious and mental status improved at a steady rate for the next 10 minutes. Upon arrival at ED pt was a&oxl with slurred speech and facial droop. Pt initially a 0 on stroke scale then a 2 upon arrival at ED. Pt has left arm paralysis at all times though both legs move equally. . . .

Thompson and Small later testified that they did not provide EMS with the information in the narrative; Carney said he did not know whether he had provided the information to EMS.

At the hospital, blood tests confirmed that Kollin had no alcohol or illicit drugs in his system. Kollin died in the hospital a month and a half later from complications resulting from the stroke.

The estate and Kollin's son brought various claims against Carney, the City of Cleveland, the Cleveland Police Department, other police officers, and the medical facility and doctors who provided Kollin with care. All defendants save Carney, the City of Cleveland, and the medical facility were eventually dismissed. Carney and the City of Cleveland moved for summary judgment, with Carney arguing that the doctrine of qualified immunity protects him from the estate's 42 U.S.C. § 1983 claims.

The district court rejected Carney's argument. It found genuine disputes about facts material to the estate's claim that Carney was deliberately indifferent to Kollin's serious medical needs, a violation of Kollin's Fourteenth Amendment right to due process. First, the court noted that Carney did not dispute that Kollin had a sufficiently serious medical need. Second, it held that a jury could reasonably find, based on the evidence considered in the light most favorable to the estate, that Carney was deliberately indifferent because he was aware that Kollin needed medical assistance ninety minutes before he requested an ambulance. Finally, the court held that the Fourteenth Amendment's prohibition of deliberate indifference to an arrestee's serious medical needs was clearly established when Carney acted.

Carney now appeals the district court's denial of qualified immunity.

## II. ANALYSIS

Because 28 U.S.C. § 1291 grants us jurisdiction only over appeals from final district court decisions, interlocutory appeals "are the exception, not the rule." *Johnson v. Jones*, 515 U.S. 304, 309 (1995). Still, a district court's denial of qualified immunity may be an appealable final decision—but only "to the extent that it turns on an issue of law." *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985). In this case, we lack jurisdiction to resolve anything other than pure questions of law. *Moldowan v. City of Warren*, 578 F.3d 351, 369 (6th Cir. 2009).

Disputes of fact may not be appealed by a defendant denied qualified immunity. *Harrison v. Ash*, 539 F.3d 510, 517 (6th Cir. 2008). We may not review "which facts a party may, or may not, be able to prove at trial," *Johnson*, 515 U.S. at 313; "whether the evidence could support a finding that particular conduct occurred," *Berryman v. Rieger*, 150 F.3d 561, 563 (6th Cir. 1998); or a district court's determination that the summary-judgment record raised a genuine dispute of material fact (unless that determination is "blatantly and demonstrably false"), *Moldowan*, 578 F.3d at 370–71; *see also Johnson*, 515 U.S. at 313. In contrast, we may review the purely legal issue of "whether the plaintiff's facts, taken at their best, show that the defendant violated clearly established law." *Quigley v. Tuong Vinh Thai*, 707 F.3d 675, 680 (6th Cir. 2013). Put simply: "a determination that a given set of facts violates clearly established law is reviewable, while a determination that an issue of fact is 'genuine' is unreviewable." *See v. City of Elyria*, 502 F.3d 484, 490 (6th Cir. 2007).

Because we lack jurisdiction over factual issues, "a defendant must concede the most favorable view of the facts to the plaintiff for purposes of the appeal," *Estate of Carter*, 408 F.3d at 309–10 (quoting *Berryman*, 150 F.3d at 563) (internal quotation marks omitted), and "limit his argument to questions of law premised on facts taken in the light most favorable to the plaintiff,"

*Phillips v. Roane Cnty., Tenn.*, 534 F.3d 531, 538 (6th Cir. 2008). If a defendant does so, we may address any remaining, purely legal arguments. *See Williams v. Mehra*, 186 F.3d 685, 689–90 (6th Cir. 1999) (en banc). But if a defendant's arguments rely on his own version of disputed facts, we must dismiss the appeal for want of jurisdiction. *McKenna v. City of Royal Oak*, 469 F.3d 559, 561–62 (6th Cir. 2006). Moreover, mere conclusory statements that a defendant construes the facts in the plaintiff's favor cannot confer jurisdiction upon this court. *Thompson v. Grida*, 656 F.3d 365, 368 (6th Cir. 2011); *see also McKenna*, 469 F.3d at 561.

In deciding the purely legal issues, we "can simply take, as given, the facts that the district court assumed when it denied summary judgment for that (purely legal) reason." *Johnson*, 515 U.S. at 319; *see also Sabo v. City of Mentor*, 657 F.3d 332, 336 (6th Cir. 2011) (dismissing appeal for lack of jurisdiction because defendant's "only argument rests on a version of the facts that differs from the version the district court assumed"). To the extent the district court did not identify the particular facts it deemed adequately supported, this court may review the record "to determine what facts the district court, in the light most favorable to the nonmoving party, likely assumed." *Behrens v. Pelletier*, 516 U.S. 299, 313 (1996) (quoting *Johnson*, 515 U.S. at 319) (internal quotation marks omitted).

Carney spends most of his principal and reply briefs arguing against the estate's version of the facts. He disputes the time the accident occurred, the estate's contention that Carney did not have enough time to perform field sobriety tests and did not believe Kollin was intoxicated, the order of events at central booking, and, most importantly, the time Carney knew Kollin needed medical attention. Carney's remaining argument is that the district court improperly relied on certain evidence, including the form referring Kollin for hospital services, a printout from the breathalyzer, and the booking photograph.

We lack jurisdiction to consider these arguments. Case law makes clear that, in this type of appeal, we may not review such factual issues. *See, e.g.*, *Johnson*, 515 U.S. at 313; *Berryman*, 150 F.3d at 563 (remarking that this court may not review "whether the evidence could support a finding that particular conduct occurred" (internal quotation marks omitted)); *Estate of Carter*, 408 F.3d at 309–10 (noting that a defendant's argument that the district court "erroneously considered inadmissible evidence" is an impermissible attempt to dispute facts on appeal). Carney replies that he is not disputing the estate's version of the facts "per se," but then proceeds to do just that. He cites no case law in support of his claim that we have jurisdiction over this appeal.

Perhaps Carney's best factual argument, which he never explicitly makes, is that the facts relied on by the district court are "blatantly contradicted by the record." *See Scott v. Harris*, 550 U.S. 372, 380 (2007) (holding that, on summary judgment, a court should not adopt a version of the facts "blatantly contradicted by the record"); *Moldowan*, 578 F.3d at 370–71 (noting, in the interlocutory appeal context, that this court may review a district court's factual determination if it is "blatantly and demonstrably false"); *see also Romo v. Largen*, 723 F.3d 670, 675 (6th Cir. 2013) (reasoning that, for interlocutory appeals, *Scott* is "limited as an exception for blatantly contradicted facts"). This "one limited exception" to the requirement that a defendant concede the plaintiff's version of the facts is met only "where the evidence is so utterly discredited by the record as to be rendered a visible fiction." *See Younes v. Pellerito*, No. 13-1103, --- F.3d ----, 2014 WL 67343, at \*4 (6th Cir. Jan. 9, 2014) (internal quotation marks omitted).

Here, the district court relied on the hospital referral form to deny qualified immunity, stating that the form "tends to suggest that Sergeant Carney (listed on the form by his badge number) noticed that Mr. Kollin needed medical assistance approximately an hour and a half

before an ambulance was called." The court also noted that conflicting deposition testimony about whether Kollin was first taken to the booking counter rather than to the breathalyzer raised a credibility issue to be resolved by the jury. Ultimately, the district court held that "there is a genuine issue of material fact regarding the point at which [Carney] realized that Mr. Kollin needed urgent medical assistance."

These facts are not blatantly contradicted by the record. The referral form itself indicates that it was filled out at 8:15 p.m., that Kollin was referred to a hospital because he "[could not] stand up" and was "incoherent," and that Carney arrested Kollin at 8:15 p.m. The EMS report indicates that the ambulance was not called until 9:43 p.m. It is reasonable to infer from this information, as the district court did, that Carney was aware at 8:15 p.m. that Kollin needed medical assistance but waited until 9:43 p.m. to call for an ambulance. This is not the only reasonable inference, but it is not an unreasonable one, and it is not blatantly contradicted by the record. The jury ultimately may not believe the estate's story, but because the district court did not rely on any fact or inference "blatantly contradicted by the record"—because those facts are not "so utterly discredited by the record as to be rendered a visible fiction"—the narrow exception to our prohibition on reviewing factual issues does not apply.

Carney's only hope for jurisdiction lies in his legal argument that the facts do not show that Carney was deliberately indifferent to Kollin's serious medical needs. But fatal to our jurisdiction, Carney's argument relies on *his version* of the facts. *See McKenna*, 469 F.3d at 561–62. Carney claims that there is "no indication anywhere in the facts or evidence" that Carney was or should have been aware that Kollin had suffered a stroke, in part because Kollin smelled of alcohol, failed field sobriety tests witnessed by Thompson and Small, walked from the car to central booking, raised his arms at central booking, and was not "unresponsive" during

the breathalyzer test because he could walk. Carney also contends that he thought Kollin was intoxicated, and that he immediately called for EMS once he realized Kollin needed medical care. But the estate disputes Carney's allegations with other record evidence, including Thompson's testimony that he never smelled alcohol on Kollin nor witnessed field sobriety tests, the fact that blood tests confirmed Kollin did not have alcohol in his system, hospital and EMS forms indicating that Kollin's left arm and left side of his face had been paralyzed since 8:30 p.m. or 9:00 p.m., testimony that Kollin never spoke while being processed at central booking, and the form referring Kollin to a hospital at 8:15 p.m. because he "[could not] stand up" and was "incoherent." And as established above, Carney may not challenge the district court's determination that "there is a genuine issue of material fact regarding the point at which [Carney] realized that Mr. Kollin needed urgent medical assistance." *See See*, 502 F.3d at 490 ("[A] determination that an issue of fact is 'genuine' is unreviewable."). Carney fails to premise his legal argument on the view of the facts most favorable to the estate.

Because Carney's sole legal argument relies on his own version of the facts, we may not consider it. And though a purely legal argument might have been made using the estate's version of the facts, Carney did not make it here. *See McKenna*, 469 F.3d at 562 (holding that, despite the possibility of legal arguments relying on facts favorable to the plaintiff, the court did not have jurisdiction "because the officers have in fact made no arguments concerning the denial of qualified immunity that do not rely on disputed facts"). Accordingly, we do not have jurisdiction to consider this matter.

## III. CONCLUSION

We dismiss the appeal for lack of jurisdiction.